UNITED STATES of America

v.

George E. PICKETT, Appellant.

No. 71–1490.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1972.

Decided Nov. 2, 1972.

Messrs. William H. Bradford, Jr., and John H. Spellman, Washington, D. C. (both appointed by this court), for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, LEVENTHAL, and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant Pickett was indicted for second degree murder (D.C.Code § 22–2403) in the slaying of his wife and found guil-

ty of that charge after a jury trial on July 16, 1969. At trial Pickett asserted an insanity defense. After recovery from a period of post-trial mental incompetency, Pickett was sentenced May 28, 1971 to a term of imprisonment of four to twenty years. In this appeal Pickett argues that it was reversible error for the court to have excluded the testimony of his brother and sister to the effect that in their opinion he was insane at the time the offense was committed. We agree with appellant and accordingly reverse for a new trial on the issue of insanity.

## I

On April 28, 1968 appellant's wife was found dead in their home with five gunshot wounds in her body. Appellant and his wife had been separated for several months. Soon after the shooting appellant told his brother he had shot his wife, and upon his brother's suggestion appellant surrendered to the police on the day following the shooting. After appellant was indicted on July 12, 1968, he was committed to St. Elizabeths Hospital for 60 days for a mental examination. This confinement was subsequently extended to over six months at the request of the hospital. During this period appellant was examined by three psychiatrists and one clinical psychologist.

At trial two psychiatrists testified for the prosecution that appellant was not suffering from any mental disease or defect at the time of the offense (Tr. 229, 247). The clinical psychologist testified

that appellant suffered from a psychosexual conflict, but that there was no evidence of a serious mental disorder (Tr. 112, 120). Another psychiatrist testified for the defense that appellant was suffering from a rather severe dependent personality character neurosis (Tr. 160).

The defense also introduced testimony of appellant's brother and sister concerning his sanity. Both related incidents and observations of appellant's behavior during the deterioration of his marriage and his condition immediately prior to his wife's slaying. Each witness had observed appellant's conduct over a period of years prior to the incident in April, 1968.[1] John Pickett, appellant's brother, testified how appellant's marriage deteriorated. After what seemed to be initially a good marriage, Mr. Pickett observed his younger brother "go down," i. e., appellant started to drink heavily and soon lost his job, along with experiencing marital difficulties (Tr. 189–92, 194–95). Mr. Pickett went on to relate that appellant's condition worsened after he and his wife separated around October, 1967. Whenever Mr. Pickett tried to discuss appellant's marital problems appellant would "clam up" or "jump the subject" (Tr. 197–98). During this testimony defense counsel sought to elicit Mr. Pickett's opinion as to whether appellant suffered from a mental disease or defect, but the trial court ruled that his lay opinion would not be allowed because "only experts may give an opinion."[2] Appellant's sister Mrs. Jackson

---

1. Appellant's brother had seen appellant "on occasions" from the time of appellant's marriage in 1965 to the shooting in April, 1968 (Tr. 194). He had last seen his brother only a week prior to the shooting (Tr. 52). Appellant's sister also had sufficient contact with appellant to form an opinion on his sanity. Appellant and his wife lived with appellant's sister during the first year of their marriage. After the couple moved out, she also saw her brother occasionally (Tr. 202–3).

2. When defense counsel began examining the observations which appellant's broth-

er had made concerning appellant's behavior the court requested that counsel approach the bench, and the following colloquy occurred:

[Prosecution]: For what purpose is this being offered?

[Defense counsel]: The purpose is this: I am going to ask [appellant's brother] his own opinion as to whether his brother George was suffering from a mental illness.

THE COURT: You can't ask a layman a question like that.

[Defense counsel]: Why can't you?

THE COURT: Because only experts may give an opinion.

testified to observing similar facts concerning appellant's behavior and again defense counsel attempted to elicit an opinion from her with respect to appellant's mental condition. The trial judge again ruled that lay opinion could not be admitted on the issue of insanity.[3]

Following appellant's conviction he was examined by a court-appointed psychiatrist and recommitted to St. Elizabeths Hospital where he remained for over a year before he was found to be competent for sentencing. Following sentencing, appellant was returned to St. Elizabeths for further treatment.[4]

It has long been the rule in this circuit,[5] and in most jurisdictions,[6] that lay persons may testify as to the insanity of an individual. Such persons may not only testify as to observed symptoms of a mental disease or defect, but may express an opinion as to the sanity or insanity of the individual. In Carter v.

---

[Prosecution]: I have no objections to his observations of his conduct and then you can draw a conclusion.

THE COURT: But he can't be asked his opinion, anything like that, when he is not an expert (Tr. 193).

3. [Defense counsel]: For the sake of the record, Your Honor ruled about lay persons giving any opinion as to whether or not a person had a mental illness.

Again, with this witness, I would proffer that her testimony would be that as of April 23, 1968, that he was suffering from a mental illness, and Your Honor—

THE COURT: I have ruled it is totally improper to ask her.

[Prosecution]: I want to reiterate there is no objection to telling us of these things she observed him do. I don't object to some of the things she would say if they are going to be brought in to show that they were bizarre things.

\* \* \* \* \*

THE COURT: Would any of the answers to the question as to direct quotes show bizarre behavior or would they simply be an account of what he told her about his wife?

\* \* \* \* \*

The Court has ruled that I will not hear anything except a tender of any bizarre statements.

I will not hear any hearsay that is simply an account of what they may have been talking about.

[Defense counsel]: I can't in honesty make a proffer that on any specific time there was any conversation as such that would be bizarre.

THE COURT: Very well. So that woud be excluded.

[Defense counsel]: The only point, for the sake of the record, I would say this: The content, although not bizarre, might have evidentiary value with respect to what the jury is going to do as far as the defense of mental illness is concerned.

THE COURT: Would you make a proffer at this time of what you expect to elicit?

[Defense counsel]: I can't make a specific proffer insofar as any specific conversations what either of the witnesses that have just been on the stand had.

THE COURT: Then it would be in the nature of fishing?

[Defense counsel]: I don't let the witnesses ramble, Your Honor.

THE COURT: I assume you went over this, as every good lawyer does, so that you would have an opportunity to know what you might reasonably expect them to say.

[Defense counsel]: Yes, I have been all over it with these witnesses.

THE COURT: What would you expect them to say?

[Defense counsel]: As I say, I am not ready to do that.

THE COURT: Very well. Then you have the ruling (Tr. 206–208).

4. During this period appellant was diagnosed as suffering from paranoic schizophrenia. At a hearing on May 21, 1971 concerning appellant's motion for a new trial based upon newly discovered evidence, the psychiatrist who had worked with appellant for three months prior to the hearing testified that his paranoic schizophrenia could be "traced at a time when he (appellant) had some marks of difficulty way back about five years" (Tr. of hearing 9).

5. *See, e. g.,* Naples v. United States, 120 U.S.App.D.C. 123, 130, 344 F.2d 508, 515 (1964); Tatum v. United States, 88 U.S.App.D.C. 386, 390, 190 F.2d 612, 616 (1951).

6. *See* J. Wigmore, Evidence § 1938 (3rd ed. 1940) and cases cited therein.

United States, 102 U.S.App.D.C. 227, 237, 252 F.2d 608, 618 (1957) we said:

> Lay witnesses may testify upon observed symptoms of mental disease, because mental illness is characterized by departures from normal conduct. Normal conduct and abnormal conduct are matters of common knowledge, and so lay persons may conclude from observation that certain observed conduct is abnormal. Such witnesses may testify *only upon the basis of facts known to them.* They may testify as to their own observations and may then express an opinion based upon those observations.

The Government acknowledges that lay opinions are permitted on the issue of insanity, but argues that their exclusion here was not error because there was a "lack of any specific underlying data" to support these opinions.[7] The Government asserts that a witness must establish that he has observed "bizarre" or "extraordinary" conduct on the part of the subject before an opinion on that person's sanity is properly admissible. We find no support for such a restriction on lay testimony on insanity and therefore reject this assertion.

While a trial judge has discretion to determine whether a witness has had sufficient contact with a person to warrant an opinion on insanity, we feel that it would unduly restrict lay testimony on insanity to require that the witness have observed "bizarre" or "extraordinary" behavior before his opinion is admissible. The nature and extent of the contacts and the observations of the witness should be as detailed as possible, but it must be recognized that an adequate foundation for opinion testimony by a layman is established when the testimony discloses that the witness through contacts with the subject had a reasonable opportunity to form an opinion.[8] The jury may then properly take into account the facts recited by the witness as to his opportunity to observe the subject in determining the weight to be given the lay opinion.[9]

We cannot say that the failure to permit the lay opinions in the insanity defense in this case did not seriously prejudice appellant. His brother and sister, through prior contacts, did have a proper foundation for expressing an opinion, and while their testimony did not detail this foundation as fully as might have been possible, this may have been due in part to the fact that the witnesses almost at the start of their testimony were cut off by the court's inaccurate statement of the law. It is also a fact that cannot be ignored that from the time appellant was indicted on July 12, 1968, he has been continuously confined in St. Elizabeths Hospital. He was so confined before trial (for examination), after trial he was so confined a year before sentencing, and since sentence was imposed he has been confined at St. Elizabeths "for treatment" and on May 21, 1971 was diagnosed as suffering from paranoic schizophrenia.[10] At trial the jury is free to reject this diagnosis and the opinions of appellant's brother and sister, but under the circumstances such testimony does have the potential to influence the jury and we therefore feel that the exclusion of the opinions of his brother and sister so injured the proper presentation of appellant's insanity defense that he must be afforded a new trial on that issue. The appellant's conviction is reversed and the case is remanded for proceedings consistent with this opinion.

Judgment accordingly.

---

7. Gov. Brief at 7–8.

8. *See* note 6, *supra.*

9. United States v. Wilson, 399 F.2d 459, 462–463 (4th Cir. 1968); Wright v.

United States, 102 U.S.App.D.C. 36, 42, 250 F.2d 4, 10 (1957).

10. *See* note 4, *supra.*