UNITED STATES of America,
Plaintiff-Appellee,

v.

Marshall Crosby MILNE, Defendant-
Appellant.

No. 73–1696.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1973.

Anderson E. Hatfield, III, Gainesville, Fla. (court appointed), for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Robert L. Crongeyer, Jr., J. Worth Owen, Asst. U. S. Attys., Pensacola, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

Marshall C. Milne appeals from the judgment of conviction pursuant to a jury verdict of guilty of the unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1).[1] On February 6, 1973 he was sentenced to terms of imprisonment on the two counts of the indictment.[2] Two issues are presented for our review. First, appellant contends that the trial court erred in denying his motion for acquittal because of insufficiency of the evidence. Secondly, he asserts that it was prejudicial error for the trial court to exclude from the evidence the opinions of three lay witnesses as to his insanity at the time of the offense. We agree with appellant's second contention and accordingly reverse and remand for a new trial.

**I**

Appellant's contention regarding the sufficiency of the evidence is based upon the alleged failure of the prosecution to establish that the substance he distributed was indeed a controlled substance, heroin. The weights recorded by the field agents of the substances appellant delivered were significantly different from the weights recorded by the laboratory chemist who analyzed the substances. There was also conflicting evidence as to whether the undercover field agent obtained the allegedly controlled substances from more than one individual on the same evening in question.

Upon an examination of the record we find appellant's first contention to be without merit. The laboratory chemist testified that weight discrepancies were often present. Field scales are apparently not as accurate as those used in the laboratory. Furthermore, field agents are not as fully trained or experienced as laboratory chemists in the use of scales. In this case the containers used to mail the substance were identified by the field agent and the receiving chemist. Any question of sufficiency of the evidence was properly left for jury determination.[3]

---

1. 21 U.S.C. § 841(a)(1) provides:
   (a) except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

2. Appellant was sentenced to fifteen years imprisonment on one count and ten years on the other. The sentences were to run consecutively, and special parole terms of six years were imposed as to each count.

3. The controlled substance was expended in testing. Thus, only the chemist's reports were placed into evidence. Appellant admits that the government established a proper chain of custody and identification for the containers.

## II

Appellant attempted to pursue an insanity defense by offering the testimony of three lay witnesses. The witnesses were permitted to describe their relationship with the appellant and all had substantial opportunity to observe his behavior.[4] The witnesses were also permitted to testify concerning the appellant's heavy drug use and his bizarre behavior.[5] Based upon this foundation[6] the appellant sought to elicit the lay opinion as to his insanity from one of the witnesses who knew him and testified as to his bizarre conduct.[7]

The trial court ruled, however, that lay opinion would not be allowed because "only a medical expert can answer a question which contains that magic wording, . . ."[8]

Because the court had ruled adversely as to appellant's first witness, John Black, he did not attempt to solicit an opinion from the succeeding witnesses, L. C. Williams and Clay Ridgeway. Although no opinion as to appellant's insanity was ever admitted into evidence the court did give a charge on the issue of insanity to the jury.

The sanity of the accused is always an element of the offense charged; when the issue is not raised, however, a presumption in favor of sanity satisfies the prosecution's burden of proof.[9] But even if only slight evidence

---

4. All three witnesses had known the appellant for a year or more, and they saw him every day.

5. The following testimony is perhaps the best example of the proof of appellant's bizarre conduct. In response to a question concerning his actions L. C. Williams replied:

> A. Well, everytime he got off of them [apparently drugs] I mean, everytime he shoot them, like he, you know, the blood be left in the syringe, he would take it and draw water in it and like this wasn't his house, these people was on vacation, you know, they left him.
> It was a beautiful house. He would take it and shoot blood all over the walls, you know, wrote Superman on the, you know, Superman in blood on the floor, you know. He did things like that. . . .

6. Apparently the trial court was not concerned about the adequacy of the foundation laid. After the court ruled the opinion testimony inadmissible, the defense counsel asked:

> Mr. Hatfield: Your Honor, is this passed upon the fact that what the man knows about what he has testified as to what he knows about Mr. Milne or is it possible to lay a predicate to elicit further evidence that might allow—
> The Court: If you are asking me if you can ask this man a question as to whether in his opinion Mr. Milne was mentally competent, the answer is no, you may not. I don't care how much time you elicit from him.

7. The appellant's first witness on this issue, John Black, was asked whether he had formed an opinion as to the appellant's mental state. The court sustained a prosecution objection stating:

> I will not receive any argument from you [defense counsel] on this. This man is not qualified to testify as to the mental condition.
> You know that has a legal significance, that term, and this man is not qualified or has not been shown to be qualified to testify as to this man's mental condition.

Defense counsel then attempted to rephrase the question to elicit the opinion of the witness as to his insanity rather than his mental state.

> [Defense Counsel]
> Well, can he answer the question as to whether he believes he was insane?
> The Court: No sir, he may not. The objection is sustained.

8. The "magic wording" to which the court referred was mental competency. Defense counsel then pointed out that he wished to question the witness concerning insanity not mental competency. Also see note 7, *supra*. From an examination of the record it appears that the terms insanity, mental state, mental competency and mental illness were used almost interchangeably or at least without precision. A fair summary of the court's ruling seems to be that lay opinion was inadmissible on the insanity issue regardless of the phraseology. There is some indication, however, that the court would allow lay testimony on the issue of normalcy or sanity.

9. Davis v. United States, 160 U.S. 469, 16 S. Ct. 353, 40 L.Ed. 499 (1895); Mims v. United States, 375 F.2d 135, 140 (5th Cir. 1967).

of insanity is introduced, the presumption disappears, and the burden is on the prosecution to prove the accused's mental capacity beyond a reasonable doubt.[10] When the issue of insanity is raised as a defense in a criminal case all *relevant* evidence, both lay and expert, should be admitted.[11] As this court pointed out in Mims v. United States,[12] "[t]he real value of expert testimony in these cases is in the explanation of the disease and its dynamics, that is, how it occurred, developed, and affected the mental and emotional processes of the defendant; it does not lie in the mere expression of conclusion." We must, of course, recognize that opinions as to sanity or insanity are distinct from opinions as to criminal capacity. Criminal capacity is a legal conclusion and even an expert, medical or legal, may not speak so as to employ a legal definition.[13]

It has long been the rule in most jurisdictions that the lay opinion of a witness who is sufficiently acquainted with the person involved and has observed his conduct is admissible as to the sanity of such individual.[14] In such circumstances the lay witness uses his opinion as a shorthand rendition of a set of collective facts otherwise difficult to state. Assuming that a proper foundation is laid there seems to be little justification for distinguishing opinions

of sanity from those of insanity.[15] The quantum of proof necessary to establish an adequate factual background showing sufficient acquaintance with the individual involved and an opportunity to observe his conduct may vary from case to case. While familiarity with such person and an opportunity to observe usual or normal human behavior may support a lay opinion as to sanity, additional or more substantial proof may be required to support a lay opinion as to insanity. Insanity is a variance from usual or normal conduct. For that reason a lay witness should be required to testify as to unusual, abnormal or bizarre conduct before being permitted to express an opinion as to insanity. As in other cases involving the qualification of a witness, the trial judge must exercise a sound discretion in concluding whether or not a particular witness is qualified. In this case the court ruled, in effect, that a lay witness would not be permitted to testify as to insanity regardless of his knowledge of the appellant and his observations and knowledge of bizarre or abnormal conduct.

Although it is unquestioned that the trial judge must exercise a sound discretion in deciding whether a particular witness is qualified to testify on the issue of insanity, as we have indicated earlier, this court is committed to a liberal policy with respect to the ad-

10. Mims v. United States, 375 F.2d 135, 140 (5th Cir. 1967); Blake v. United States, 407 F.2d 908, 911 (5th Cir. 1969).

11. Mims v. United States, 375 F.2d 135, 143 (5th Cir. 1967); Blake v. United States, 407 F.2d 908, 911 (5th Cir. 1969).

12. 375 F.2d 135, 143 citing Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608, 617 (1957).

13. J. Wigmore, Evidence § 1958(3) (3d ed. 1940). Of course, a medical expert may always give an opinion as to sanity.

14. *See* J. Wigmore, Evidence § 1938 (3d ed. 1940) and cases cited therein. *Also see* Breland v. United States, 372 F.2d 629 (5th Cir. 1967).

15. *See*, United States v. Pickett, 152 U.S. App.D.C. 346, 470 F.2d 1255, 1257 (1972) where the court stated, "[Lay] persons may testify as to observed symptoms of a mental disease or defect, but may express an opinion as to the *sanity or insanity* of the individual." (Emphasis added).

missibility of such evidence.[16] As we stated in Blake v. United States: [17]

It follows that if there is some evidence supporting the claim of insanity, a conceded fact here, the issue must be submitted to the jury. Brock v. United States, 5 Cir. 1967, 387 F.2d 254, 257; Mims v. United States, 5 Cir. 1967, 375 F.2d 135, 140. *This means only slight evidence.* Lee v. United States, 5 Cir. 1937, 91 F.2d 326–330; Howard v. United States, 5 Cir. 1956, 232 F.2d 274, 276. (Emphasis added).

\* \* \* \* \* \*

We come then to the sufficiency of evidence question. The district court followed the salutary principle, applicable in cases involving the defense of insanity, of admitting all evidence, both lay and expert, in any wise relevant or pertinent, to the issue of insanity. This is in keeping with the philosophy of letting in all facts which might be helpful to the jury in making the final determination of the criminal responsibility of the accused. See Mims v. United States, supra, 375 F.2d, at p. 143, where the court pointed ed to the sound rule that the issue of insanity should be determined by the jury from all of the evidence rather than from the opinion of experts alone.

A jury is certainly free to reject and may indeed reject such lay opinions. The witnesses here were friends of the appellant and of questionable credibility. We cannot say, however, that under these circumstances such testimony would have no potential to influence the jury. Appellant was entitled to the admission of such testimony, and hence his conviction must be reversed. The case is remanded for a new trial consistent with this opinion.

Reversed and remanded.

16. Some courts appear not to distinguish the foundation necessary for the admissibility of an opinion as to sanity from the proper foundation necessary for an opinion as to in-

sanity. See, United States v. Pickett, 152 U.S.App.D.C. 346, 470 F.2d 1255, 1258 (1972).

17. 407 F.2d 909, 911 (5th Cir. 1969).