## UNITED STATES

### v.

**Thomas J. SCHNABLE, Chief Sonar Technician (E–7), U.S. Navy.**

### NMCCA 9900852.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 11 Feb. 1999.

Decided 27 July 2006.

Lt G. Gerding, JAGC, USNR, Appellate Defense Counsel.

Lt Stephen Reyes, JAGC, USNR, Appellate Defense Counsel.

J. Byron Holcomb, Civilian Defense Counsel.

Lt Frank Gatto, JAGC, USNR, Appellate Government Counsel.

Maj Kevin Harris, USMC, Appellate Government Counsel.

Lt C.J. Gramiccioni, JAGC, USNR, Appellate Government Counsel.

Before RITTER, Senior Judge, THOMPSON, Appellate Military Judges.

THOMPSON, Judge:

Officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of four specifications of indecent acts with a minor and one specification of communicating a threat, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was sentenced to confinement for 20 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.

In taking his action, the convening authority approved only so much of the sentence as provided for reduction to pay grade E–1, confinement for a period of 20 years, and a dishonorable discharge. In a further act of clemency, he suspended all confinement in excess of 15 years for a period of 15 years from the date of sentence. Additionally, the convening authority deferred the appellant's adjudged forfeitures and reduction in rate and waived the automatic forfeitures for a period of 6 months from the date of his action for the benefit of the appellant's dependents.

In published decision, a predecessor panel of this court affirmed the findings and sentence approved by the convening authority (CA). *United States v. Schnable,* 58 M.J. 643 (N.M.Ct.Crim.App.2003). After granting the appellant's petition for review, our superior court summarily set aside our earlier decision pursuant to *United States v. Jenkins,* 60 M.J. 27 (C.A.A.F.2004) and returned the record of trial to this court for further review by a panel of different judges. After carefully considering the record of trial, the appellant's 15 assignments of error,[1] his briefs and

---

1. Appellant originally submitted 12 assignments of error in his original brief of 21 February 2001. In his first supplemental brief, he submitted two additional assignments of error, however, he misnumbered them as 14 and 15, omitting the number 13. In his second supplemental brief, the appellant submitted an additional assignment of error concerning post-trial delay, which was unnumbered. Assignments of Error IX through XII were submitted under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). We find Assignments of Error V, VI, VIII, and IX–XII to be without merit.

 I. THE EVIDENCE IS FACTUALLY AND LEGAL [sic] INSUFFICIENT AS TO BOTH THE CHARGE AND THE SPECIFICATIONS.

 II. THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS THE WALKING SHORTS AND UNDERWEAR STSC SCHNABLE WAS WEARING WHEN ORDERED INTO NCIS [sic] OFFICE ON SEPTEMBER 5, 1998.

 III. THE MILITARY JUDGE ERRED IN FAILING TO REQUIRE EXPERT OPINION AS TO EVIDENCE OF ESTHER'S ALLEGED RETARDATION.

 IV. THE MILITARY JUDGE ERRED IN FAILING TO ADMIT THE VIDEOTAPE AS DEFENSE EX. N INTO EVIDENCE.

 V. THE MILITARY JUDGE ERRED IN FAILING TO ALLOW AN EXCULPATORY STATEMENT OF WHAT SCHNABLE RELATED TO HIS PASTOR.

 VI. THE MILITARY JUDGE ERRED IN ADMITTING TESTIMONIAL EVIDENCE OF GRAF & CONRAD AS HEARSAY.

 VII. INAPPROPRIATENESS OF SENTENCE.

 VIII. ALFORD PLEA/DAVIS PLEA SHOULD HAVE BEEN ALLOWED.

 IX. ART. 25 & R.C.M. 912(b)(2) ARE UNCONSTITUTIONAL.

 X. THE MILITARY JUDGE ERRED IN FAILING TO ALLOW EVEN ADEQUATE VOIR DIRE OF MEMBERS.

ancillary documents, and the Government's response, we conclude that the findings are correct in law and fact. We grant relief on the issues of severity of sentence and excessive post-trial delay. Finding the sentence to be inappropriately severe, we affirm the sentence in part. Exercising our discretionary authority under Article 66(c), UCMJ, we believe the accused is entitled to sentence credit for excessive post-trial delay in his case. Otherwise, we find that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant and his family resided in Port Orchard, Washington. On Saturday morning, 5 September 1998, the appellant was at home with his family working around the yard while his wife (Mrs. S) was working inside the home. Their children, including the appellant's mentally handicapped 13-year-old adopted daughter, E, were present. While outside, the appellant asked E to go into the garage with him, where he fondled her by holding her against him and kissed her, inserting his tongue into her mouth. He also placed his hands inside her pants and on her buttocks. After this, E went inside, where she told her sister, L, what her father had done to her. She then went into her room, where the appellant soon joined her. While there, the appellant and E sat on the bed. The appellant unzipped his pants and exposed his penis. He then told E to unzip her pants. The appellant rubbed his penis "up and down" and asked E to touch it. Record at 390. The appellant's daughter, L, entered the room and observed her father zipping up his pants. E left the room. Later, Mrs. S asked E to go get the mail. The appellant got into his truck, drove down the driveway to where E was walking, and asked E to take a ride with him. While parked some distance away from the family home, the appellant touched E's private parts "inside" her body, exposed his penis, asked E to rub it, and ejaculated. Record at 396. Later E told her mother the appellant had said "it's coming". Record at 316. E testified that she saw "yellow stuff" which was "slimy" coming out of his penis. Record at 396–98. The appellant had E rub his penis and said he wanted her to lick him. *Id.* He told E not to tell anyone about his acts with her.

During her testimony about riding in her father's truck, E stated that her father parked his truck at a place with a lot of signs. This incident occurred during the 1998 national general election. Her testimony was corroborated by evidence of the profusion of political signs along area roads. While E and the appellant were away in his truck, L told Mrs. S she thought the appellant was "hurting" E. Record at 312. Upon the return of the appellant and E, Mrs. S asked E what the appellant had done. When E advised her of the appellant's actions, the mother drove all of the children to the Naval Hospital. After examining E and speaking to Mrs. S, medical personnel contacted the Naval Criminal Investigative Service (NCIS). Special Agent (SA) Connolly (C) contacted the appellant that afternoon at his residence. Shortly thereafter, the appellant reported to NCIS, where SA C seized certain clothing worn by the appellant, which was similar to the clothing worn during the incidents, according to E and her mother. Subsequently, E made several consistent statements concerning the indecent acts to various medical treatment providers.

After the incident, and pursuant to a court order, the appellant was prohibited from re-

XI. THE MILITARY JUDGE ASSUMED THE ROLE OF PROSECUTOR.
XII. THE MILITARY JUDGE ERRED IN ALLOWING A MERE 20 MINUTES TO PREPARE FOR SENTENCING WHERE STSC SCHNABLE FACED UP TO 31 YEARS IN CONFINEMENT.
XIII. [NO AOE ASSIGNED]
XIV. THE COURT ERRONEOUSLY INSTRUCTED THE MEMBERS AS TO POST TRIAL RESTRICTIONS AS TO WHEN AND WITH WHOM THE MEMBERS MAY DISCUSS THE CASE INCLUDING DEFENSE COUNSEL.
XV. THE ABSENCE OF THE TAPE RECORDING UPON WHICH THE DEFENSE SOUGHT TO BASE ITS CHALLENGE AS TO THE CLOSING INSTRUCTION ALSO RAISES THE ISSUE WHETHER THE ENTIRE RECORD OF TRIAL IS IMPROPERLY AUTHENTICATED IN ACCORDANCE WITH THE RULE.
XVI. DENIAL OF SPEEDY POST–TRIAL REVIEW.

turning to his home. While at the home of Mrs. H, a neighbor and friend he had known for 13 years, the appellant expressed his feelings to her, stating that, for the first time, he had thought about killing his wife so that his kids could be brought up in a loving foster home. Mrs. H remonstrated with him, but he insisted that he had really thought about it. He further advised Mrs. H that if she said anything to the appellant's wife about this, he'd have to kill her, as well. During this conversation, the appellant was speaking in disjointed sentences, was behaving erratically and was very upset and emotional. After considering the incident over several days, Mrs. H's concern about these statements caused her to report them to her pastor and NCIS.

As a result of these actions, the appellant was charged with four specifications of indecent acts with his daughter, E, and one specification of communicating a threat toward his wife.

### Sufficiency of the Evidence

The appellant first contends that the evidence is legally and factually insufficient to sustain his conviction to the Charge and its five specifications. We disagree.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the crimes beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561–62 (N.M.Ct.Crim.App.1999), *aff'd*, 54 M.J. 37 (C.A.A.F.2000); *see also* Art. 66(c), UCMJ.

The test for factual sufficiency is more favorable to an appellant. It requires the members of this court to be convinced of the appellant's guilt beyond a reasonable doubt, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses. *Turner*, 25 M.J. at 325; *see* Art. 66(c), UCMJ. Reasonable doubt, however, does not mean the evidence must be free from conflict. *See United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986). In exercising the duty

imposed by this "awesome, plenary, *de novo* power," *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990), this court may judge the credibility of witnesses, determine controverted questions of fact, and substitute its judgment for that of the military judge or court-martial members, Art. 66(c), UCMJ.

■ *Indecent Acts with a Minor:* In this case, there is ample testimony to support the findings by the members that the appellant committed four separate indecent acts upon E on three separate occasions. E testified at length concerning the appellant's actions and statements to her comprising the offenses contained in Specifications 1 through 4 of the Charge.

Testimony from E's sister L revealed that she went into E's room and saw her father turn away and zip up his pants, partially corroborating E's testimony. E's testimony was consistent with her prior disclosures of the appellant's actions to her mother and health providers. Deoxyribonucleic acid (DNA) evidence further implicated the appellant. Also, his actions and statements at the time were consistent with a consciousness of guilt. For example, the appellant admitted to his wife that he had talked to E about sex, and also expressed his concern that he would be "demoted" as a result of the incident. Record at 318–19.

Although the appellant selectively points to portions of the record of trial in arguing that certain evidence was exculpatory, we note that the appellant's civilian counsel's questions were leading and often confusing in form to the 13–year–old mentally handicapped victim. As well, the appellant contends that his actions, as described by E during trial, were not reasonable and, therefore, unbelievable. Inasmuch as the law considers no indecent act committed on a child to be reasonable, we find this contention specious.

Considering the evidence in the light most favorable to the Government, we are convinced that a rational fact finder could have found the elements of the crimes beyond a reasonable doubt. None of the points raised by the appellant sway our conviction beyond a reasonable doubt of his guilt concerning the

four specifications alleging indecent acts with his daughter. We conclude that the evidence is legally and factually sufficient as to these offenses.

 *Communicating a Threat*: The appellant contends that, at the time he made the statement to Mrs. H about killing his wife, he had no present intention of threatening anyone. However, the evidence is sufficient to support his intent to threaten Mrs. S by his words. It is not necessary that an accused actually intend to carry out the threat to constitute communicating a threat in violation of Article 134, UCMJ. *United States v. Alford,* 34 M.J. 150, 151 (C.M.A. 1992). The declarant's actual intent is only one factor to be considered along with all other factors present in the case, including the understanding of the person to whom the statement was made, and all other surrounding circumstances. *United States v. Gilluly,* 32 C.M.R. 458, 461, 1963 WL 4582 (C.M.A. 1963). A comment made under circumstances which indicate it was made in jest or for an innocent or legitimate purpose, or which contradicts the express intent to commit the act is not an offense. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 110c. In evaluating whether a threat exists, we view the evidence from the viewpoint of a reasonable man. *United States v. Phillips,* 42 M.J. 127, 130 (C.A.A.F. 1995); *United States v. Shropshire,* 43 C.M.R. 214, 1971 WL 12761 (C.M.A.1971).

 The circumstances of the threat clearly indicate an individual who was upset about his wife's actions in the prosecution against him, and the no-contact order he had been issued preventing him from returning to his home or seeing his family. His statement concerning his thoughts of killing his wife was not merely a description of his state of mind. This is especially obvious when coupled with his statement that he was "really serious" about thinking of killing his wife, and his remark that if Mrs. H told his wife about what he was thinking he would have to kill her too. We find the appellant's words under these circumstances clearly manifested a "present determination or intent" to harm a person "presently or in the future." MCM, Part IV, ¶ 110(b)(1).

Based on the evidence outlined above and the entire record of trial, this court is convinced that a rational fact finder could have appropriately found the appellant guilty of this offense. We ourselves are convinced beyond a reasonable doubt that the comments made by the appellant to Mrs. H violated Article 134, UCMJ.

### Seizure of the Appellant's Clothing

At trial, the military judge denied the appellant's motion to suppress his clothing seized by NCIS. The denial of this motion is the basis for the appellant's second assignment of error.

 A military judge's ruling on admissibility of evidence is reviewed for abuse of discretion. His or her ruling will not be overturned on appeal " 'absent a clear abuse of discretion.' " *United States v. Johnson,* 46 M.J. 8, 10 (C.A.A.F.1997)(quoting *United States v. Redmond,* 21 M.J. 319, 326 (C.M.A.1986)). This is a strict standard requiring more than a mere difference of opinion. *United States v. McElhaney,* 54 M.J. 120, 130 (C.A.A.F.2000). A military judge's ruling on admissibility of evidence will only be overturned if it is " 'arbitrary, fanciful, clearly unreasonable,' " or " 'clearly erroneous.' " *United States v. Miller,* 46 M.J. 63, 65 (C.A.A.F.1997)(quoting *United States v. Travers,* 25 M.J. 61, 62 (C.M.A. 1987)). In conducting our review, we are required to consider the evidence "in the light most favorable to the prevailing party." *United States v. Reister,* 44 M.J. 409, 413 (C.A.A.F.1996).

 On the afternoon of the incident, after interviewing E and Mrs. S, SA C contacted the appellant and asked him to meet SA C at SA C's office for an interview. Upon the appellant's arrival, SA C observed that the appellant was wearing the same clothing as E described him wearing during the incident that morning.[2] After the interview and be-

---

2. E Told SA C that the appellant was wearing a red shirt and shorts at the time of the incident. She stated he ejaculated while in the truck and wiped some of the ejaculate up with his shirt. There is no indication that the appellant changed his clothing prior to meeting SA C the afternoon

fore the appellant left, SA C contacted a Navy lawyer to ask about seizing the appellant's shirt. He was advised that he could seize the shirt since it was in plain view, and he had probable cause to believe that it was the same shirt worn by the appellant at the time of the incident. Later, a second call was made to the lawyer concerning seizure of the appellant's shorts and underwear. Again, he was advised that, if they were in plain view, he had probable cause to seize them. At this point, SA C proceeded to the base gymnasium where the appellant had gone. The appellant had removed his shorts and shirt and checked out gym clothing and was clad only his underwear when SA C arrived at the gym. SA C observed the underwear being worn by the appellant in plain view. He then seized the shirt, shorts, and underwear as evidence. No consent was obtained from the appellant. The appellant was taken into custody and turned over to his command.

The operative facts in this case are not in dispute. The only dispute is whether the military judge correctly applied the law in denying the motion to suppress, which we will review *de novo*. After hearing testimony from SA C, the military judge determined that the seizure of the appellant's shirt, shorts and underwear was lawful. The military judge found that SA C was at a place he had a right to be (the NCIS office and the gym) when he observed the shirt, shorts, and underwear in plain view. It was immediately apparent to SA C that these articles of clothing were evidence of a crime, and, therefore, his seizure of the items without a warrant were justified under the "plain view" exception under MILITARY RULE OF EVIDENCE 316(d)(4)(C), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.).

The military judge also found substantial evidence to support seizure of the clothing based upon exigent circumstances, that is, to prevent possible destruction of the evidence (ejaculate) as a result of laundering or other action by the appellant. The appellant's argument against admission based upon the

fact that the age of the semen is unknown goes to weight and not admissibility. Substantial evidence existed to support the contention that the semen was introduced onto the clothing on the date of the incident.

We find that the military judge's findings of fact and conclusions of law are correct and that this evidence was properly admitted. MIL. R. EVID. 316(d)(4)(B) and (C); *see United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). Even if the seizure of the appellant's clothing was not lawful on these grounds, a third basis for seizure existed, i.e., "inevitable discovery" under MIL. R. EVID. 311(b)(2).

### Evidence of Victim's Mental Condition

■ In his third assignment of error, the appellant contends that the military judge erred in permitting Mrs. S to testify concerning her opinion that E suffered a mild degree of mental retardation. We disagree.

Mrs. S testified that her daughter E, who was adopted when she was two years old, was underdeveloped physically and mentally, compared to her other children. She had been diagnosed with mild retardation and suffered from a speech impediment. Mrs. S home-schooled her children and testified that E did not perform at the same level in math or reading as the other children. The military judge ruled that Mrs. S could give an opinion concerning E's mental acuity based upon her observations as teacher and mother.

MIL. R. EVID. 701 states that a lay witness may testify to an opinion or inference that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Two requirements must be met. First, the opinion must be rationally based on perceptions of the witness. Second, the opinion must be helpful to the trier of fact. STEPHEN A. SALTZBERG, ET AL., MILITARY RULES OF EVIDENCE MANUAL (4th ed.1997) at 830; *see* MIL. R. EVID. 701.

Mrs. S' testimony satisfied these requirements. Her testimony assisted the members

---

of the incident. Based on the nature of the emission of ejaculate, SA C believed traces of ejaculate might be found on articles of the appel-

lant's clothing, including his shorts and underwear, based on the nature of the emission of the ejaculate. Record at 86–89.

in evaluating the testimony of a 13–year–old child, who was physically small for her age, and had difficulty in communicating certain information or in responding to the forms of questions. An understanding by the members concerning E's mental functioning was helpful in assessing her credibility and understanding her testimony.

We disagree with the appellant's argument that testimony concerning the mental retardation of a witness is the subject of an expert witness under MIL. R. EVID. 702. MIL. R. EVID. 701 permits a lay witness to testify as to their opinion or inference which is rationally based on their perception and is helpful to a clear understanding of the determination of a fact in issue. Mrs. S testified to matters concerning E's mental limitations and abilities which she had observed. *See United States v. Pickett,* 470 F.2d 1255, 1258 (U.S.App.D.C.1972). Therefore, we conclude that the military judge did not abuse his discretion in permitting Mrs. S to testify concerning her observations of E's mental retardation.

### Exclusion of Videotape

■ In his fourth assignment of error, the appellant avers that the military judge erred when he declined to allow the defense to introduce a videotape during the appellant's presentation of evidence on the merits. The videotape purported to show the route taken by the appellant and E and the place they parked on the morning of the incident, and was intended to illustrate to the members that there were more secluded places the appellant could have parked his truck in order to molest his daughter than on the side of the road as testified by E.

This videotape was apparently made in the presence of the appellant, who accompanied the person filming and directed him as to the route pictured on the videotape. The defense counsel desired to enter the videotape into evidence to show the route taken by the appellant and E, and to show that there were more secluded locations to commit the offenses along that route than the location testified to by E. The defense counsel at-

tempted to introduce this evidence solely through the testimony of the person filming the route, and his own testimony that this was the route pointed out to him by the appellant. The Government objected on the basis that a proper foundation had not been laid. The military judge ruled that the foundation offered by the appellant for admission of the videotape was insufficient for the purpose of showing the route actually taken by the appellant and his daughter on the date of the incident, since no witness other than the appellant or E had personal knowledge of the actual route taken.

We review a military judge's ruling on the admissibility of evidence for an abuse of discretion. We find that the military judge did not abuse his discretion in sustaining the Government's objection and refusing to allow admission of the videotape.

MIL. R. EVID. 1001(2) includes videotapes under the definition of photographs. Hence, the authentication of the videotape is governed by the same rules regarding the authentication of photographs in MIL. R. EVID. 901. *See also Gordon v. State,* 735 S.W.2d 510 (Tex.Ct.App.1987), *aff'd,* 784 S.W.2d 410 (Tex.Crim.App.1990). In addition to proper authentication, a videotape must also meet the requirement of relevancy and demonstrate that its probative value substantially outweighs any prejudicial impact. *See* MIL. R. EVID. 401, 402, and 403.

By ensuring that a proper foundation is laid, or that a document is properly authenticated, the military judge is guaranteeing that the court members could find that particular evidence is what it purports to be. MIL. R. EVID. 901(a).[3] In *United States v. Richendollar,* 22 M.J. 231, 232 (C.M.A.1986), the court held that "[o]rdinarily, a photograph may be authenticated by the testimony of a witness who is familiar with the scene depicted and states that the photograph is an accurate representation of that scene.... Under this traditional 'pictorial testimony theory', the photograph is then incorporated by reference into the testimony of the au-

---

**3.** MIL. R. EVID. 901(a) states: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

thenticating witness and is admissible as an illustration of that witness' testimony." (Citations omitted). *See also United States v. Reichart,* 31 M.J. 521, 523 (A.C.M.R.1990).

In this case, the only two people with knowledge of the route taken on the day of the incident were the appellant and E. The appellant exercised his right not to testify. E could not testify as to the specific route taken or the location where the appellant parked the truck. The appellant argues on appeal that this videotape should have been admitted under MIL. R. EVID. 803(24) or 804. Review under the hearsay evidence rules, however, is inappropriate in this case because the videotape was not a statement or assertion, but a depiction of the route allegedly driven.

We also note that, absent the testimony of the appellant or any other witness with actual knowledge of the route taken on the day of the incident, the relevancy for admission of this videotape could not have been established under MIL. R. EVID. 401 and 402. However, the barring of this videotape did not preclude the defense from offering other testimony or photographs concerning the existence of secluded areas near the appellant's home in support of their theory, presuming their relevance was properly established. Based on other evidence adduced at trial, the defense argued that there were secluded places to drive and park near the appellant's home. We find the military judge's ruling concerning exclusion of this videotape was not an abuse of discretion.

### Sentence Appropriateness

█ The appellant's seventh assignment of error contends that his sentence is inappropriately severe. Under Article 66(c), UCMJ, we are charged with determining whether the approved sentence, including 20 years of confinement, is appropriate, without regard for any suspension allowed by the convening authority. Here we are presented with the question of whether a sentence including 20 years of confinement is appropriate for this Sailor and his crimes. Taking into account all the facts and circumstances and mindful of our responsibility to maintain general sentence uniformity among cases under our cognizance, we believe a sentence including confinement for 16 years to be appropriate.

At first glance, the approved sentence might be considered completely appropriate. A chief petty officer took advantage of his mentally-retarded, 13–year–old daughter, and inappropriately fondled her, kissed her, and had her touch his penis. All of his actions occurred on one day. In the wake of his crimes, the appellant left a child who was having trouble sleeping and had behavior problems.

However, we must also consider a number of factors that tend to extenuate or mitigate the offenses. First, we note that there is no evidence of permanent physical injury to the child. Second, the appellant accepted psychological treatment and counseling. Third, the appellant received the support of friends and family, professional peers, and supervisors. Fourth, other than this incident, he had an unblemished service record.

The gravity of the appellant's crimes certainly warranted a substantial period of confinement. However, the length of the confinement must be proportional to the offenses, taking into account all of the matters previously discussed. We are also mindful of the approved sentences of similar cases in the field as we discharge our statutory mandate. After careful review and consideration of the record, we find the imposition of 20 years to be inappropriately severe, and we shall disapprove all confinement in excess of 16 years.

### Supplemental Assignments of Error

The appellant's motion to file two additional assignments of error out of time was granted by this court. Raised over three years after the trial, the appellant now alleges that the military judge erroneously instructed the members not to discuss the case with defense counsel. He also claims improper authentication of the record of trial in light of the absence of a tape recording of a portion of the trial proceedings concerning closing instructions. After a careful review of the record of trial and submissions by both the appellant and the Government on this issue, we find no basis to grant relief.

The appellant attached a declaration made by his civilian defense counsel wherein he claims he and the military defense counsel "looked at each other incredulously" when the military judge provided the members with their final instructions. However, neither counsel raised this issue at any time after the trial until three years later.

A review of the trial transcript reveals that, prior to dismissing the members, the military judge gave them the following instruction:

> You took an oath at the beginning not to disclose your vote or opinion or that of any other member, and you're held to that vote. So you cannot disclose your vote or opinion, or that of any other member. You can, however, if you want, discuss other aspects of this case, as long as it isn't your vote or opinion, or that of any other member. You can choose not to discuss this with anyone. That's certainly your right. But if you do discuss it with anyone, those are the limits, your—not your vote or opinion, and not that of any member.

Record at 857. This instruction was consistent with Mil. R. Evid. 606(b), which requires that the deliberations of the members remain confidential. *See United States v. Brooks*, 42 M.J. 484, 487 (1995); *Loving*, 41 M.J. at 236. The military judge's instruction in this regard was proper.[4]

In an attempt to support this challenge of improper instruction by the military judge, the appellant requested the actual tape recording of the portion of the record of trial in which the closing instructions were given to the members. The tape recording could not be located, and, therefore, the appellant now claims that the record of trial is not properly authenticated.

Pursuant to Article 54(a), UCMJ, 10 U.S.C. § 854(a), the record of trial was reviewed and authenticated by the trial counsel and the military judge less than a month after the court-martial adjourned. A copy of the authenticated record of trial was served on the defense counsel on 19 March 1999.[5] There is no mention of or objection to any alleged irregularities in the closing instructions given by the military judge in matters the appellant submitted to the convening authority. His failure to do so constituted forfeiture of any objection to the contents of the authenticated record of trial. In every regard the record of trial appears to be precisely what it purports to be, a verbatim transcription of the general court-martial proceeding in the appellant's case. The appellant does not point to any irregularity in the record to rebut this presumption. We find the appellant's two supplemental assignments of error to be without merit.

### Assertion of Post–Trial Delay

The appellant filed a second supplemental brief, and assignment of error before this court[6] asserting denial of speedy post-trial review of his court-martial. An appellant's right to timely review extends to the post-trial and appellate process. *See Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F.2003). This right is embodied in Article 66, UCMJ, as well as the Due Process Clause of the Fifth Amendment. *See United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006); *Toohey v. United States*, 60 M.J. 100, 101–02 (C.A.A.F.2004); *Diaz*, 59 M.J. at 37–38.

We consider four factors in determining if post-trial delay violates the appellant's constitutional right to due process: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in

---

4. The military judge's instruction comports with both the Military Judge's Benchbook, Dept. of the Army Pamphlet 27–9 (30 Sep 1996) at 106, and the Trial Guide, U.S. Navy–Marine Corps Trial Judiciary (Jan 1996) at 104–05.

5. Recommendation of the Staff Judge Advocate of 26 Mar 1999 at 3.

6. See Appellant's Supplemental Brief of 15 November 2004.

extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice.' " *Id.* (quoting *Toohey,* 60 M.J. at 102).

The appellant was tried and sentenced on 11 February 1999 and this case was docketed with this court on 7 June 1999. After several enlargements of time granted to both the appellant and the Government to file briefs for this lengthy, complex case, we issued original opinion on 28 April 2003. The Court of Appeals for the Armed Forces set that decision aside and remanded the case to us on 29 September 2004. After further requests for enlargements of time in which to file supplemental briefs and replies, the final pleading was filed on 10 February 2005. The appellant has been incarcerated throughout this process.

There was a lengthy delay involved in the appellate review. We issued our first opinion almost four years after the case was originally docketed with this court. After our superior court acted on this case, submission of additional briefs and assignments of error and responses by the government took another 16 months. Finally, over one year will have elapsed before we issued this opinion in satisfaction with our superior court's mandate.

This case was both tried and docketed with this court prior to the date our superior court decided Moreno, so the presumptions of unreasonable delay set forth in that case do not apply here. Nevertheless, we find that the delay in this case was facially unreasonable, triggering a due process review.

The record reveals no reasons for the delay apart from the requests for enlargements and the remand by our superior court for a second Article 66(c) review by this court. Concerning the third and fourth factors, the appellant did not assert his right to a timely review until 15 November 2004, when he filed his supplemental brief with this court. He does not assert, nor do we find, evidence of specific prejudice. We also find no "extreme circumstances" that give rise to a strong presumption of evidentiary prejudice. Thus, weighing all four factors in this case, we find no due process violation is implicated here. *Jones,* 61 M.J. at 83.

We are aware of our authority to grant relief under Article 66, UCMJ, even in the absence of specific prejudice. *Jones,* 61 M.J. at 83; *Toohey,* 60 M.J. at 100; *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002); *United States v. Brown,* 62 M.J. 602 (N.M.Ct.Crim.App.2005)(*en banc*). Considering the lengthy processing delays during the appellate review by this court, we view this as an appropriate case for discretionary relief. Accordingly, we grant relief in the form of an additional one year reduction in confinement.

### Conclusion

Accordingly, we affirm the findings and only that portion of the sentence as extends to a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction to pay grade E–1.

Senior Judge RITTER and Judge FELTHAM concur.