**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Charles Edward McINTYRE,**
Defendant–Appellant.

No. 91–6331.

United States Court of Appeals,
Tenth Circuit.

June 7, 1993.

Order Modifying Opinion and Denying
Rehearing Aug. 18, 1993.

Jack Fisher, Edmond, OK, on the brief, for defendant/appellant.

Charles Edward McIntyre, pro se.

Joe L. Heaton, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, OK, on the brief, for plaintiff/appellee.

Before TACHA and EBEL, Circuit Judges, and O'CONNOR, District Judge.*

EBEL, Circuit Judge.

This case comes before us on direct appeal from the defendant's conviction in the United States District Court for the Western District of Oklahoma. The defendant was charged with conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846; possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and travelling and causing travel in interstate commerce to facilitate the distribution and possession of cocaine and cocaine base with intent to distribute, in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2. The case was tried to a jury, which found the defendant guilty on all counts. The defendant now appeals, asserting fifteen different errors below. We affirm.

## FACTS

The defendant was involved, along with a number of co-conspirators, in a drug trafficking ring that transported cocaine and cocaine base from Southern California to Oklahoma City, Oklahoma. The cocaine was then "cooked" and transformed into rock cocaine or "crack" and sold on the streets.

The police intercepted some portion of three transfers of narcotics between California and Oklahoma. In January of 1990, the defendant, accompanied by Vickie Hogg, one of the co-defendants, travelled to California from Oklahoma and acquired cocaine from J.C. Chatman, one of the co-defendants and the primary source for narcotics in California. Vickie Hogg purchased a one-way bus ticket to Oklahoma in the name of Stephen Smith and gave the ticket and the cocaine to Tashawn Kyle Cook at the Los Angeles Bus Depot. Cook was stopped, consented to a search of his luggage and the cocaine was discovered and confiscated.

On July 27, 1990, officers of the Oklahoma City Police Department, while on a narcotics interdiction assignment at the Will Rogers World Airport in Oklahoma City, observed the defendant, accompanied by Darren Hogg and Doris Wright, purchase tickets to Southern California. Darren Hogg was stopped at the security checkpoint where a dark and unidentifiable object was detected by the x-ray machine. He consented to a search of his bag where the police found $9,700 in cash. D. Hogg was informed that the money would be detained for inspection by a narcotics dog and that he was free to go.

The officers returned to where the defendant and Wright were standing and began to question them. They both denied being with the other or with D. Hogg. Wright at first consented to a search of her bag but once it had commenced told the officer to stop. The officer complied with her request. The officers informed the defendant and Wright that their bags would be detained until they could be inspected by a narcotics dog but that they were free to go. The bags were taken to another level of the airport and the parties followed, protesting that they had planes to catch. The defendant gave permission to search the bag he was carrying but denied that it was his. Wright then reauthorized the search of her bag. The police found $12,000 in cash and a portfolio containing letters to Vickie Hogg in the defendant's bag. The three individuals made their flight but their bags were detained.

---

* The Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the Dis- trict of Kansas, sitting by designation.

On August 23, 1990, the defendant was stopped again at the Will Rogers Airport in Oklahoma City. The officers in Oklahoma had received information from an officer of the Dallas–Fort Worth task force that a passenger registered as Charles Smith had purchased a one-way ticket from Los Angeles to Oklahoma City with cash and suggested that he be stopped.[1] The officers observed the defendant, whom they recognized from the airport incident on July 27, 1990, deplane and followed him to the baggage claim area. The defendant picked up a gift-wrapped box, which was marked with the name Charles Smith. The officers approached the defendant and began to question him. Although he claimed to have no identification, the defendant's plane ticket read Charles Smith. The defendant claimed that the box was not his, that it belonged to Larry Taylor, that he had no way of contacting Larry Taylor, and that it contained cookware.

The officers informed the defendant that both he and the box would be detained until a search warrant could be obtained. The defendant was escorted to the police office in the airport where he was subjected to a pat down search. The officers observed cigarette rolling papers in the defendant's open shirt pocket and when removed, observed marijuana in a cellophane envelope. The defendant was informed that he would be placed under arrest for possession of marijuana.[2] At that time the defendant orally consented to the search of the box. However, because the defendant was unable to sign a consent form, the police instead made an application for a search warrant. Based in part on a positive alert from a narcotics detector dog, the search warrant was issued and the box was found to contain four 4,000 milliliter glass beakers as are commonly used in the cooking of crack cocaine.

On August 24, 1990, the Oklahoma City police were informed by the Los Angeles Police Department, who received the information through an informant, that the defendant was out on bond and was at an apartment on 46th Street in Oklahoma City cooking cocaine that he and his co-conspirators had brought in from California. The Oklahoma City police verified that the defendant was out on bond, learned that the apartment was rented to Vickie Hogg, and learned from the apartment manager that there was suspicious activity at the residence. The police obtained a search warrant and executed it on August 25, 1990; however, no drugs were found. Vickie Hogg was in the apartment when the warrant was served and the defendant and Tashawn Kyle Cook were found outside the apartment.

On February 28, 1991, a confidential informant notified the Oklahoma City Police Department that the defendant was the "main man" in the biggest narcotics ring in Oklahoma City, and that the defendant had just returned from California with half a kilogram of cocaine, and that he was in room 141 of the Comfort Inn in Oklahoma City. The officers obtained a search warrant and served it the same day. They found the defendant with a woman in the room. The defendant was searched and two bags of cocaine were found in his underwear. Two additional bags of cocaine were found in the box springs of the bed. The defendant was placed under arrest at that time.

The defendant was indicted along with Vickie Hogg on March 20, 1991. He was charged with conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (count 1); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (counts 2 & 5); and travelling and causing the travel in interstate commerce to facilitate the distribution and possession of cocaine and cocaine base with intent to distribute, in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2 (counts 3 & 4). On July 2, 1991, the court ordered the trial of Vickie Hogg and the defendant (No. CR–91–52–T) consolidated with the trial of Clara Gary, Lenanier Brown, J.C. Chatman, Ronnie Miller, and Kenneth Eugene Wright, each of whom had been indicted separately (No. CR–91–51–T). On July 16, 1991, the court granted the government's unopposed motion for

---

1. The information that the ticket was purchased with cash was found to be false at the July 12, 1991, suppression hearing. Order of July 29, 1991.

2. On July 22, 1991, the district court ordered the suppression of the marijuana found in the pat down search and all statements made following the search.

the severance of the trial of Clara Gary and Lenanier Brown.[3]

The case was tried to a jury, and on September 30, 1991, the defendant was found guilty on all five counts. He was sentenced to life imprisonment on counts one and five, 480 months on count two, and 60 months on counts three and four. The sentences were ordered to run concurrently. The defendant filed a notice of appeal on October 3, 1991.

In this appeal the defendant alleges fifteen separate errors: 1) denial of the motion to suppress evidence seized at the airport on July 27, 1990; 2) denial of the motion to suppress the glass beakers seized at the airport on August 23, 1990; 3) admission of the beakers pursuant to an unlawful search warrant; 4) the unlawful introduction of evidence of a prior arrest that was suppressed at a pre-trial hearing; 5) failure to suppress evidence seized from the motel on February 28, 1991; 6) failure to excuse for cause a juror who was a former police officer; 7) unlawful admission of hearsay documents; 8) unlawful admission of evidence of other acts outside the conspiracy; 9) prosecutorial comments on the defendant's failure to testify; 10) insufficient evidence to support a guilty verdict; 11) cumulative error; 12) error in the calculation of the amount of cocaine distributed for sentencing purposes; 13) erroneous classification of the substances distributed as cocaine base; 14) the unlawful application of 21 U.S.C. § 841 and U.S.S.G. § 2D1.1., which he claims are void for vagueness; and 15) error in increasing his sentence under U.S.S.G. § 3B1.1(c) for serving as a leader or organizer.[4] We affirm.

## I. *The Admission of Evidence*

The first five of the defendant's allegations of error relate to the district court's admission of evidence that was acquired through searches and seizures at the Oklahoma City Airport on July 27, 1990, and August 23, 1990, and in a search of an Oklahoma City motel room on February 28, 1991. The defendant filed a motion before the district court on July 8, 1991, requesting that the court suppress this evidence. He also filed a forty page brief in support of this motion that set forth the same bases for suppression that now constitute the allegations of error on appeal. An evidentiary hearing was held on July 12, 1991, at which the defendant was present and represented by counsel. The court denied the defendant's motion on July 15, 1991, and on July 29, 1991, it issued an explanatory order to clarify the ruling. The court denied the defendant's motion to suppress as to all except the marijuana seized in the pat down search

3. The defendant was ultimately tried together with J.C. Chatman, Ronnie Miller, Kenneth Eugene Wright, and Vickie Hogg. J.C. Chatman was the principal supplier of cocaine in southern California. Ronnie Miller worked for Chatman. Kenneth Eugene Wright purchased cocaine from Darren Hogg, who was in turn supplied by the defendant. Vickie June Hogg worked closely with the defendant and served both as a courier for the transportation of the drugs and as the defendant's business manager.

None of the alleged errors in this appeal arise from the intricacies of the joint trial. The district court was apparently cognizant of the potential for conflicts. For example, on July 19, 1991, the district court granted the defendant's motion in limine excluding any mention of the defendant in the introduction of co-defendant Wright's confession.

4. In addition to those arguments raised by counsel, we have before us several pleadings filed by the defendant pro se. The defendant has filed a pro se supplemental brief arguing five separate errors. He alleges that the district court erred by (i) allowing the admission of, and testimony concerning, the drugs seized at the Los Angeles bus station in January 1990; (ii) denying the defendant's pre-trial motion for notice to introduce evidence of similar acts; (iii) denying an evidentiary hearing to determine the existence of a conspiracy before allowing co-conspirator testimony; (iv) refusing to grant the defendant's motion for change of court-appointed attorney; and (v) refusing to adjust the defendant's sentence for acceptance of responsibility and diminished capacity, and allowing enhancements for possession of a firearm and his role in the offense. He has also filed two motions to amend his pro se supplemental brief, one of which asserts, as an additional allegation of error, that the district court improperly admitted testimony concerning evidence that was subject to a suppression order. We also have before us the defendant's pro se supplemental reply brief which asserts four additional grounds for reversal: (i) insufficiency of the evidence; (ii) failure to give requested instructions; (iii) improper prosecutorial statements; and (iv) denial of the effective assistance of counsel.

We have reviewed each of these ten allegations of error, and the many subarguments as set forth in the defendant's pleadings, in light of the record as a whole. We find no error.

on August 23, 1990, and any statements made following that search.[5]

■■■■■ In reviewing the denial of a motion to suppress, we consider the evidence in the light most favorable to the government, and we accept the district court's findings of fact unless they are found to be clearly erroneous. *United States v. Ibarra*, 955 F.2d

5. In response to the defendant's motions, the district court did suppress "the marijuana seized during a pat-down search on August 23, 1990, and any statements made following the search." Order of July 29, 1991. The defendant claims that the district court wrongly allowed testimony regarding his arrest for the marijuana found in his pocket on August 23, 1990.

His claim is based on the following exchange that took place between counsel and Sergeant Eastridge at trial:

Q. Now, Sergeant Eastridge, after you took these items, they were checked in there at the Police Department; is that correct?

A. That's correct. Into the property room.

Q. What did you do with the individual that you [ ] knew to be under the name of Willy Thomas and Charles Smith?

A. He was arrested.

Q. At that time, did this individual give you an indication of another name?

A. Yes, ma'am.

Q. What was that name?

A. Charles Edward McIntyre.

Q. Mr. McIntyre, after his arrest, was taken to jail; is that correct?

A. Yes, ma'am.

R.Vol. VII at 199–200. No objection was made at trial to the introduction of this evidence and accordingly we review its introduction for plain error. Fed.R.Crim.Proc. 52(b); *United States v. Thody*, 978 F.2d 625, 631 (10th Cir.1992). The counsel for the defendant has submitted an affidavit that professes that he did not receive a copy of the suppression order and for that reason he did not object to the testimony. We find that the mention of this arrest does not rise to the level of plain error. The officer's testimony does not introduce evidence that was precluded by the suppression order. The testimony did not directly bring into evidence either the marijuana itself nor any statement following the arrest. The defendants do not appeal the scope of the suppression order as it concerns the marijuana and accordingly that question is not before us. Further, we find the testimony, even if error, to be harmless. *See U.S. v. Popejoy*, 578 F.2d 1346, 1350 (10th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978). It refers only to an arrest, without mention of the drugs. In light of the subsequent arrest on February 28, 1991, when the defendant was found to possess both marijuana and crack cocaine, we find that mention of the earlier arrest for possession of marijuana was harmless.

1405, 1409 (10th Cir.1992); *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990). We have undertaken our own review of the record, and we have reviewed the district court's explanatory order. We are unable to conclude either that any of the factual findings of the district court were clearly erroneous or that the district court made any errors of law.[6]

6. The defendant's claims regarding various pieces of evidence that were introduced over their motion to suppress include:

1) *Money and letters seized at the airport on July 27, 1990*

The defendant claims that this evidence was seized without probable cause, that his consent to the search was involuntary, and that the scope of the search went beyond the consent that was given.

First, probable cause was not necessary for the temporary detention of the carry-on bag prior to the time that consent to search was given. Rather, this limited detention could be sustained upon a finding of articulable suspicion. In *United States v. Bell*, 892 F.2d 959, 967 (10th Cir.1989), *cert. denied*, 496 U.S. 925, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990), this court noted that "[t]emporary detentions for questioning may be justified if there is articulable suspicion that a person has committed or is about to commit a crime" (citations and quotations omitted). In *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983), the Supreme Court recognized that "some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong counterveiling governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime."

Second, the evidence here was clearly sufficient to establish articulable suspicion. The defendant was travelling with two other people (although they each denied it, Wright admitted to arriving together with the other two, the police observed them approach the ticket counter together and also saw D. Hogg carry off a bag that Wright had brought into the airport with her). The bag carried by one of the defendant's companions was found to contain a suspicious amount of cash in denominations such that the police suspected it was linked to drugs. The defendant also appeared nervous and was unable to produce any identification. Finally, the officers found it significant that the defendant was travelling to Los Angeles.

The implication that the intrusion in the instant case would have interfered with the defendant's travel plans is pure conjecture. The police officer told the defendant that he was free to leave. Although his bag was to be detained for a narcotics dog to examine, it is not clear that this would have interfered with the travel plans.

## II. Refusal to Grant a For–Cause Dismissal of a Juror Who Was a Former Police Officer

 The defendant claims that it was error for the district court to refuse to dismiss for cause one of the jurors who was a former police officer. Whether an individual is qualified to serve as a fair and impartial juror is a decision that is firmly within the discretion of the district court. *United States v. Grismore*, 546 F.2d 844, 848 (10th Cir.1976). The decision to refuse a for-cause dismissal will only be disturbed on appeal upon a "clear showing of abuse of discretion." *Id.* at 848; *see United States v. Chapman*, 158 F.2d 417, 421 (10th Cir.1946).

 We do not agree that there was an abuse of discretion in the instant case. The fact that a prospective juror was once a police officer is not grounds, ipso facto, for disqualification. *See Mikus v. United States*, 433 F.2d 719, 724 (2d Cir.1970) (membership in a police force is not grounds for automatic disqualification from a criminal jury); *cf. Grismore*, 546 F.2d at 849 (the fact that a

There is no evidence as to how long it would have taken the narcotics dog to arrive. In fact, even with the delay that was caused in the instant case, the defendant made his plane.

The defendant also claims that his ultimate consent to search was not voluntarily given. He relies on the facts that he was not told that he need not consent and that he has below average intelligence. Whether a defendant is told that he need not consent is only one factor in a test that mandates that a court look to the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). The district court determined that the consent was voluntary, and we cannot conclude that finding was in error. Regarding the defendant's below-average intelligence, it is not clear that the police knew or should have known about the defendant's deficiencies in this case. In fact, the circumstances indicate to the contrary. The defendant was capable of giving and travelling under an assumed name, and he was capable of running a large drug operation. The record does not support defendant's claim that consent was involuntary.

When the bag was searched, the police found, in addition to a significant amount of cash, a portfolio that contained letters addressed to Vickie Hogg. The defendant objects to the search of the portfolio asserting that the consent was only to search for drugs, that drugs could not have been in the portfolio and therefore the search was beyond that to which he consented. The district court found that the consent was not so limited and the record supports the district court's ruling.

2) *The box and beakers seized at the airport on August 23, 1990*

The defendant claims that this seizure was illegal because the reasonable suspicion articulated was illegitimately based on the allegedly illegal encounter at the airport on July 27, 1990. Because we find that the challenge to the earlier airport encounter is without merit, this challenge also fails. In any event, the district court found that even without the knowledge gained in the prior encounter, there was a reasonable basis for the officers to seize the package until they could get a search warrant to inspect it. We agree.

The officers were alerted to the presence of a suspicious character on the plane, the defendant appeared nervous, was travelling under an assumed name, could not produce identification, was defensive when questioned about the box, denied that the box was his although the name on the box matched that on his ticket, and he told the police that he had no way to find Larry Taylor, whom the defendant claimed owned the box. Further, a narcotics dog alerted on the box.

3) *Challenge to the validity of the search warrant for the box*

The defendant claims that the search warrant for the box was illegal because the affidavit used to acquire it contained false information (the ticket to Oklahoma was not purchased with cash) and it contained information about prior arrests that was acquired from the defendant after the illegal search of his pocket which uncovered marijuana.

This claim is also without merit. First, the defendant orally consented to the search of the box; it was only after the defendant claimed that he could not read or write and therefore could not sign a written consent that the officers decided to obtain a search warrant. Second, the district court found that the affidavit, even without the false statement and the wrongfully obtained information, was sufficient to justify issuance of the warrant, and we agree. The factors set forth in paragraph 2 above justify the warrant.

4) *The evidence found at the Comfort Inn on February 28, 1991*

The defendant claims that the evidence found in the search of the Comfort Inn should have been suppressed because the affidavit was insufficient to justify the warrant. He claims that the affidavit contained a false statement (there was not a criminal case pending in California), that it was based on illegally obtained information from the prior airport encounters, and that the tip which identified the Comfort Inn was not corroborated. The district court adequately addressed these concerns and concluded that even with the offending material deleted, there was probable cause established in the affidavit to support the search warrant. We agree, particularly because of our conclusion that the prior airport encounters were constitutional.

prospective juror is the wife of a policeman does not warrant a for-cause dismissal). In the instant case the record reveals that the trial judge undertook a thorough examination of the potential juror, explored his potential prejudice, and satisfied himself of the juror's impartiality. The former officer testified that he had been out of law enforcement for over 12 years and that he did not feel that experience would have any impact on his assessment of the credibility of witnesses or the guilt of the defendant. Given the careful and thorough examination of the potential juror and the circumstances of this case, we find that the refusal to grant a for-cause dismissal was not an abuse of discretion.[7]

## III. *The Admission of Documents Alleged to Be Hearsay*

On appeal, McIntyre alleges that the district court erroneously admitted five documents which should have been excluded as hearsay: two motel registration cards ("Exhibits 52 and 53"); a cellular phone application and record of calls ("Exhibit 24"); copies of nine Western Union money orders ("Exhibits 6a–i"); and an American Express receipt ("Exhibit 25"). In addition, McIntyre argues that the district court erred when it allowed testimony concerning five other documents that were allegedly hearsay even though it refused to admit those documents into evidence. These documents consisted of

7. Furthermore, the former officer did not sit on the jury in the instant case. Rather the defendants used a peremptory challenge to remove him. The Supreme Court in *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), held that there is no violation of either the Sixth or Fourteenth amendments when a trial court has erroneously denied a for-cause challenge and the juror is subsequently struck through the use of a peremptory challenge. The Court concluded that "the loss of a peremptory challenge [does not] constitute[ ] a violation of the constitutional right to an impartial jury." *Id.* at 88, 108 S.Ct. at 2278. "Any claim that the jury was not impartial ... must focus ... on the jurors who ultimately sat." *Id.* at 86, 108 S.Ct. at 2277. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* at 88, 108 S.Ct. at 2278. Subsequent opinions of the Tenth Circuit have reached similar conclusions.

two apartment rental receipts ("Exhibits 18 and 19"); customer copies of several money order receipts ("Exhibits 20 and 44"); and a customer copy of a car rental receipt ("Exhibit 23").

Evidentiary rulings are committed to the discretion of the trial court and are only reviewed for an abuse of that discretion. *United States v. Zimmerman,* 943 F.2d 1204, 1211 (10th Cir.1991). Deference to the trial judge is heightened when reviewing rulings on questions of the admissibility of hearsay evidence. *Boren v. Sable,* 887 F.2d 1032, 1033 (10th Cir.1989). We review evidentiary rulings by considering the record as a whole. *Id.* at 1034.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A statement is an "oral or written assertion ... of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a). Hearsay evidence cannot be admitted unless it falls under an exception. Fed.R.Evid. 802.

### A. The Motel Registration Cards

The defendant objects to the admission into evidence of Exhibits 52 and 53, registration cards from two motels located in California.[8] The documents were introduced

Because the erroneous denial of a for-cause challenge does not rise to the level of a constitutional violation, we apply the harmless error analysis set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (citing *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248). In the instant case the defendant does not allege that the use of peremptory challenges on this juror resulted in an impartial jury or disadvantaged him in any way. Accordingly, we find that even if the for-cause challenge was improperly denied, any error resulting therefrom was harmless.

8. The registration card from the Villa Viejo Motel indicated that a Vickie Hogg and one other person checked in on August 21, 1990, and stayed one night. The ledger of arrivals and departures from the Magic Carpet Motel indicated that Vick-

to support the prosecution's theory that Vickie Hogg and at least one of the other conspirators travelled to California to purchase cocaine. The government offered these documents for the truth of the matter asserted, namely that Vickie Hogg checked into the two motels on the dates recorded and paid for the rooms. Accordingly, they are hearsay. *See United States v. Jefferson,* 925 F.2d 1242, 1252 (10th Cir.1991) ("a receipt introduced as evidence of payment for a good or service constitutes hearsay"); *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1110 (1st Cir. 1986) (money order receipts inadmissible hearsay to prove payments had been made); *United States v. Watkins,* 519 F.2d 294, 296–97 (D.C.Cir.1975) (receipts for rent offered to prove defendant lived at address were offered for truth of matter asserted and therefore inadmissible hearsay).[9]

■ The district court admitted the arrival and departure log from the Magic Carpet Motel and the registration form of the Villa Viejo Motel under the business records exception to the hearsay rule, Federal Rule of Evidence 803(6).[10] We turn first to the Magic Carpet records. As to the arrival and departure log from the Magic Carpet Motel, the defendant failed to make a proper objection at trial to the admission of the docu-

ment. Accordingly, we review the district court's determination for plain error. Fed. R.Evid. 103(a)(1), (d); *United States v. Thody,* 978 F.2d 625, 631 (10th Cir.1992).[11]

■ The owner of the Magic Carpet Motel testified that the log was kept in the regular course of business. However, the owner also testified that an employee of the motel filled in the log based on information received from the guest. Because the motel employee relied on information received from the guest in compiling the log, the record poses a hearsay problem.

■ The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information. *See 2 McCormick on Evidence,* § 290 at 274 (John William Strong, ed., 4th ed. 1992) (stating that the underlying theory of the business records exception is "a practice and environment encouraging the making of accurate records. If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails, just as it does when the person feeding the information does not have firsthand knowledge.")

ie Hogg had checked in on August 19, 1990, rented two rooms, and stayed one night.

9. We find no distinction between offering the evidence to prove that Vickie Hogg herself checked into the motel, or second, offering the document to prove that someone claiming to have the same name as the Vickie Hogg checked into the motel. In either event, the document would be introduced for the purpose of showing that someone using the name Vickie Hogg had checked into the motel. That is the assertion on the registration cards and it was made out of court. Hence, it is hearsay. *Contra United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir. 1980).

10. Federal Rule of Evidence 803(6) states:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or

other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

11. At trial the following exchange took place between the judge and the defendant's counsel:

MR. FISHER: Your Honor, we would object to this as being hearsay unless a proper foundation is laid showing the identity of the person that's—the representative's name, the name of the person being the person that's represented in this document. We feel that it is hearsay for the purpose of identification. THE COURT: Well, why is it not a business record?

MR. FISHER: Your Honor, it's not a business record because—it may be a business record. But, it's attempting to show the identity of someone. And that it is offered for the truth of the matter asserted.

R.Vol. VI at 11–12. Counsel for the co-defendants proceeded to make objections such as (i) "[i]t is a business record, but it's not his business record," based on misconceptions regarding the witness' dates of ownership of the motel, and (ii) "it may be a business record. But, it is offered as hearsay."

In order for the business records exception to apply, Rule 803(6) requires "an informant with knowledge acting in the course of the regularly conducted activity." Fed.R.Evid. 803(6), Advisory Committee Notes on 1972 Proposed Rules. The notes of the Advisory Committee on the 1972 Proposed Rules state:

> Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. The leading case, *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decision.

In the instant case, the motel clerk relied on the guest, who was not under a business duty or compulsion, to provide the information that went into the document. Therefore, the document presents hearsay problems.

■ However, the fact that the name on the registration was obtained from an actor not under a business compulsion does not necessarily mean the business records exception is inapplicable. If the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person, the exception may still apply. Some courts have required that the business employee recording the information be "able in some way to verify the information provided—for example, by examining a credit card, driver's license, or other form of identification." *United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980); *see United States v. Zapata,* 871 F.2d 616, 625 (7th Cir.1989); 2 *McCormick on Evidence* § 290 at 275. We do not feel that in every case there must be direct testimony that an employee actually verified the information, nor is it necessary that there be an express policy that identification be checked. In some cases, the interests of the business may be such that there exists a sufficient self-interest in the accuracy of the log that we can find its contents to be trustworthy. *See FDIC v. Staudinger,* 797 F.2d 908, 910 (10th Cir.1986) (" '[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court.' ") (*quoting Weinstein's Evidence* ¶ 803(6)[02] at 803–179 to –181 (1985)); *Manufacturers and Traders Trust Co. v. Goldman (In re Ollag Constr. Equip. Corp.),* 665 F.2d 43, 46 (2d Cir.1981) (finding information on financial statements provided to a bank in the regular course of the bank's business to be sufficiently trustworthy to qualify as business records, in part because providing of false information under such circumstances is subject to criminal sanctions; the court contrasted such information to that provided by hotel guests, where there is no similar indicia of reliability). However, in the instant case we do not find adequate guarantees of trustworthiness in the financial self-interests of the motel. Moreover, there was no evidence either that the identity of the individual claiming to be Vickie Hogg was actually checked or that there was a policy to do so. Nor do we find it persuasive that a motel employee transcribed the information rather than the guest.[12]

12. The courts in *Lieberman,* 637 F.2d at 100–101, and *Zapata,* 871 F.2d at 625, rejected the notion that the admissibility of a document under the business records exception of Fed.R.Evid. 803(6) was controlled by whether the recording person was a guest or employee of the hotel. Indeed, although we feel that this is one factor to consider in determining the trustworthiness of the source or method of preparation, it is not determinative. Whether the guest tells the clerk his name and address and the clerk then writes it down or whether the guest writes the information down, the guest is still the source of the information. Accordingly, an examination of the source, method, and circumstances of preparation is necessary regardless of who transcribes the information.

Although the admission of the Magic Carpet log may have been erroneous, we nevertheless are not convinced that it amounted to plain error. To constitute plain error, the district court's error in admitting the document must have been "both obvious and substantial." *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.1991) (*quoting United States v. Brown*, 555 F.2d 407, 420 (5th Cir.1977)). In light of our previous discussion, we do not find the error in admitting the Magic Carpet Motel records to be obvious. Accordingly, we find that the admission of the Magic Carpet log was not plain error.

The district court also admitted the registration card and folio receipt from the Villa Viejo Motel under the business records exception to the hearsay rule. *See* Fed. R.Evid. 803(6).[13] The office manager of the motel testified that those records were kept in the normal course of business, and that, although a portion of the registration card was filled out by a guest, the motel enforced a policy of verifying the identity of guests by examining driver's licenses. Consequently, we find that the Villa Viejo records were properly admitted under the business records exception to the hearsay rule. *See Lieberman*, 637 F.2d at 101; *Zapata*, 871 F.2d at 625.

### B. The Western Union Money Orders

The defendant objects to the admission into evidence of Exhibits 6(D)–(I), copies of money order receipts that were subpoenaed from Western Union.[14] The copies of the money order receipts were offered by the government to show the means of money transfer and the involvement of certain individuals in the conspiracy. The documents were therefore offered for the truth of the matter asserted on the face of the receipts and are hearsay. *See United States v. Jefferson*, 925 F.2d 1242, 1252 (10th Cir.1991) ("a receipt introduced as evidence of payment for a good or service constitutes hearsay"); *see also FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1110 (1st Cir.1986) (money order receipts inadmissible hearsay to prove payments had been made); *United States v. Watkins*, 519 F.2d 294, 296–97 (D.C.Cir.1975) (receipts for rent offered to prove defendant lived at address and therefore offered for truth of matter asserted).

Exhibits 6(D)–(I) were introduced by the government through an employee of Western Union. The Western Union district manager testified the records were kept in the ordinary course of business. He also testified that although no identification was required to send money, identification would be required to pick up the money under the circumstances of these transfers. The defendant objected that, because the documents were being offered to prove the identities of senders and recipients of money, and there was no attempt by Western Union to verify the identities of the senders and recipients, the business records exception did not apply. The district court admitted the documents finding that the objection was "appropriate for cross examination. It goes to the credibility of the exhibit and the witness. But, not to its admissibility." This decision was partially in error.

Because Western Union did not have a policy of verifying the identity of senders, and because it is apparent from the testimony brought out at trial that senders could easily use aliases, the documents were inadmissible to prove the identity of senders of money. *See United States v. Bland*, 961 F.2d 123, 126–27 (9th Cir.) (registration form for handgun purchase was business record

---

**13.** At trial, the defendant objected on the grounds that the witness was not a proper custodian of the Villa Viejo documents and that the information contained in the documents was provided by someone other than a motel employee. R. Vol. VI at 21, 26.

**14.** The documents showed transfers between (a) Vincent Wilson and Gene McIntyre; (b) Lucy Black and J.C. Chatman; (c) Theresa Taylor and Pam Chatman; (d) Charles McIntyre and J.C. Chatman; (e) John Chatman and Pamela Chatman; (f) J.C. Chatman and Pam Chatman; (g) J. Chatman and Pam Barnes; (h) J. Chatman and Pam Chatman; (i) J. Chatman and Pam Chatman.

The government introduced the receipts in two stages at trial. Exhibits 6(A)–(C) were introduced during the testimony of Darren Hogg. He authenticated the documents and testified that he personally made one of the transactions and directed someone else to make the other two transfers. *See* Fed.R.Evid. 901. Darren Hogg testified that he was present when all of the transfers were made. The court properly admitted Exhibits 6(A)–(C) as non-hearsay. Fed.R.Evid. 801(c).

because identity of registrant was verified), *cert. denied,* —— U.S. ——, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992); *United States v. Patrick,* 959 F.2d 991, 1000–02 (D.C.Cir.1992) (receipt not business record to show purchaser identity because no showing that purchaser identity was verified); *United States v. Zapata,* 871 F.2d 616, 625–26 (7th Cir.1989) (hotel registration was a business record because standard practice of hotel was to verify guest's identity); *United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980) (hotel registration not business record because no evidence that guest's identity was verified or that practice of hotel was to do so). However, because Western Union required the verification of identity to receive money, the documents were admissible to prove the identity of the recipients.

■■■ Accordingly, the defendant was entitled to an instruction limiting the use of the documents to identification of recipients of the money. But, it does not appear from the record that the defendant requested such an instruction. We therefore will only reverse on this basis if there was plain error affecting the defendant's substantial rights. *United States v. Fingado,* 934 F.2d 1163, 1166 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991); *United States v. Petermen,* 841 F.2d 1474, 1481 (10th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989). Under the facts of this case we conclude that the admission of the evidence did not amount to plain error.

### C. Evidence Pertaining to the Existence and Location of Certain Documents Rather Than to the Assertions Contained Therein

■■■ At trial the government had planned to offer into evidence two apartment rental receipts ("Exhibits 18 and 19"), customer copies of several money order receipts ("Exhibits 20 and 44"), an American Express receipt ("Exhibit 25"), and a customer copy of a car rental receipt ("Exhibit 23"). The documents had been found in Vickie Hogg's car, luggage, and apartment. The government had planned to offer the evidence to link the defendants together in a common scheme and to connect them to certain locations. The court considered each of these documents in camera, and, with the exception of the American Express receipt, refused to allow them into evidence on hearsay grounds. The court, however, did allow the police officer who found the documents to testify concerning the names and addresses contained in the documents and where the documents were found. The court reasoned that testimony regarding the documents and where they were found, if offered to link the defendants together and to certain locations, did not pose hearsay problems because it was not offered for the truth of the matter asserted.[15] Although few courts have considered the issue in any detail, the overwhelming majority of courts, including several panels of this Circuit, have concluded with little discussion that circumstantial evidence[16] is not

---

**15.** When considering the evidence in camera, the court stated:

> The fact that in someone's home is something that links him to another address, it's not saying anything. It's not being offered to prove the truth of the matter asserted. It is just the fact that it is there.
>
> The same as—I believe there is a rent receipt in regard to Vickie Hogg on another address. And you want to offer that to show that she had leased that other address. Well, I think that's hearsay if it is offered to prove that she, in fact, rented a certain address. But, if you want to offer it, just have your investigator say, we found documents in her house which have that address on them. In other words, linking her to that address.
>
> Also, I think there was a document in her house maybe with the name J.C. Chatman on it. I think that just the fact that she has a document or a piece of paper with J.C. Chatman's name on it is admissible. Again, it's not

offered to prove the truth of the matter asserted. It is just the fact that she has his name. I think it is admissible against both of them for whatever use the jury wants to make of it. But, the documents themselves would not come in.

R. Vol. VIII at 5–6.

**16.** The phrase "circumstantial evidence" is a bit misleading. Just because evidence is introduced circumstantially, rather than directly to prove a fact, has no bearing on whether the evidence itself is hearsay. As we noted in *United States v. Jefferson,* 925 F.2d 1242, 1252–53 (10th Cir.(10th Cir.1991)

> [w]hether evidence is offered as circumstantial evidence as opposed to direct evidence has nothing to do with whether it constitutes inadmissible hearsay.... the fact that the evidence was introduced to link circumstantially the accused to the crime does not render the hearsay violation any more acceptable. Indeed, in

hearsay under the Federal Rules of Evidence.[17] Furthermore, academic and practical writings are in agreement that such evidence is not hearsay under the rules.[18]

Important guidance is offered in the Notes of the Advisory Committee on 1972 Proposed Rules. The Notes explain how Fed.R.Evid. 801(c) was intended to be applied as follows:

> It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category

of "statement." Whether nonverbal conduct should be regarded as a statement for purposes of defining hearsay requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement. Other nonverbal conduct, however, may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which

many cases, the government will be forced to rely solely upon circumstantial evidence in order to achieve a conviction. The protection afforded to an accused by Rule 801 should not be discarded simply because the evidence is to be used circumstantially.

The label of "circumstantial evidence" is used, however, because it is commonly accepted by the courts. It denotes evidence that is not introduced for the assertions contained therein or at least evidence where the party who introduces it does not rely on the assertions for the purposes for which they were made. Rather the document is introduced for the inferences that may be drawn circumstantially from its existence or from where it is found, regardless of whether the assertions contained therein are true or not.

**17.** *United States v. Peveto*, 881 F.2d 844, 853–54 (10th Cir.) (traffic ticket found in defendant's apartment, introduced to tie him to van containing contraband, was not introduced for the truth of the matter asserted on ticket that he had committed a traffic violation), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Markopoulos*, 848 F.2d 1036, 1039 (10th Cir.1988) (spiral notebook entries offered as circumstantial evidence of conspiracy and not for truth of the matter asserted); *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) (order to scare individual offered to show that it occurred, and not for its truth or falsity); *United States v. Hensel*, 699 F.2d 18, 35 (1st Cir.1983) (list of names nonhearsay to show participation in conspiracy through inference that member of conspiracy possessed list but not from accuracy of the list itself); *United States v. Mejias*, 552 F.2d 435, 446 (2d Cir.) (hotel and luggage receipts and business card not offered for truth of matter asserted but as circumstantial evidence to link defendant with hotel, luggage found therein, and individual whose name appeared on card), *cert. denied* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977); *United States v. Ellis*, 461 F.2d 962, 970 (2d Cir.) (address book entries and driver's license nonhearsay because offered as circumstantial proof of association with others and ownership), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972); *United States v. Mishkin*, 317 F.2d 634, 637 (2d Cir.) (documents identifying names, phone number, and reference to store found in defendant's possession were nonhearsay to show connection

between individuals), *cert. denied*, 375 U.S. 827, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963); *United States v. Mazyak*, 650 F.2d 788, 792 (5th Cir. Unit B. 1981) (letter, addressed to all four defendants, found aboard ship was admissible nonhearsay as circumstantial proof of association between defendants, and collective association with ship), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *Brown v. United States*, 403 F.2d 489, 491 (5th Cir.1968) (note with name and phone number found in defendant's possession nonhearsay to show knowledge of another member of conspiracy), *cert. denied*, 397 U.S. 927, 90 S.Ct. 932, 25 L.Ed.2d 106 (1970); *United States v. Marino*, 658 F.2d 1120, 1124–25 (6th Cir.1981) (directions, receipts, bank and customs documents, and name and phone number notations were admissible nonhearsay to show circumstantial relationship of parties to scene, contraband, and other parties); *United States v. Patrick*, 959 F.2d 991, 999–1000 (D.C.Cir.1992) (name found on receipt admissible for nonhearsay purpose of showing that item belonging to defendant found in same room with contraband but not to show that defendant lived in apartment where found because that would rely on the truth of an assertion in the receipt); *United States v. Watkins*, 519 F.2d 294, 297 (D.C.Cir. 1975) (implying no hearsay problem if the prosecution had offered receipts merely to show they were located in the bedroom occupied by the defendant).

**18.** David F. Binder, *Hearsay Handbook*, § 2.07 at 31 (3d ed. 1991) ("An out-of-court assertion constitutes circumstantial evidence if the trier of fact may, regardless of its truth, infer from it, alone or in combination with other evidence, the existence or nonexistence of a fact in issue. An out-of-court assertion offered as circumstantial evidence is not hearsay."); 2 *McCormick on Evidence* § 250 at 111–12 (John William Strong, ed., 4th ed. 1992); 6 *Wigmore on Evidence* § 1788 at 313 (Chadbourn Revision 1976) ("If, then, an utterance can be used as circumstantial evidence, i.e., without inferring from it as an assertion to the fact asserted ..., the hearsay rule does not oppose any barrier, because it is not applicable."); David W. Louisell & Christopher B. Mueller, *Federal Evidence*, § 417 at 108–22 (1980 & 1992 Supp.); Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶ 801(c)[01] at 801-77—801-82 (1992).

belief the existence of the condition may be inferred. This sequence is, arguably, in effect an assertion of the existence of the condition and hence properly includable within the hearsay concept.... Admittedly evidence of this character is untested with respect to the perception, memory, and narration (or their equivalents) of the actor, but the Advisory Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds. No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily on the weight to be given the evidence.... *Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted,*

*also excluded from the definition of hearsay by the language of subdivision (c).* Fed.R.Evid. 801(c), Notes of the Advisory Committee on 1972 Proposed Rules (citations omitted) (emphasis added).

■ Here, the American Express receipt and the testimony about Exhibits 18, 19, 20, 23, and 44 were introduced only to link various of the defendants together by the "circumstance" that documents bearing the names of certain defendants or the location of certain drug transactions were found in Vickie Hogg's possession. That testimony did not depend upon the truth of the assertions contained in the documents, and consequently we conclude such evidence was not hearsay as defined by Fed.R.Evid. 801(c).[19]

**D. The Cellular Phone Application and Record of Calls**

■ The defendant objects to the admission into evidence of Exhibit 24, an application for cellular phone service and record of calls under the account name Vickie Hogg.[20] The documents were introduced to

**19.** Exhibits 18 and 19 are the rental receipts in the names of McIntyre and Hogg for the address on W. 139th St. in Hawthorne, California. They were found in Vickie Hogg's luggage. The district court ruled that they were hearsay if offered to prove that Vickie Hogg paid rent for a particular apartment, but that the prosecution could present evidence that a document was found in Vickie Hogg's possession that contained the address. The prosecution offered testimony of the police officer who found the receipts that he found two receipts that showed the address. R.Vol. VIII at 79–80.

Exhibit 20 is the money order receipt found in Vickie Hogg's apartment that documented a transfer of money between Nicole and Keisha Cochran and listed an address of 500 S.W. 93rd St., a known crack house. It was offered to prove that Vickie Hogg was connected to the crack house. Other evidence was later admitted to show McIntyre had delivered cocaine to that location. The district court allowed testimony that a document was found with the particular address on it.

Exhibit 44 consisted of money order receipts made out to Vickie Hogg for rent payments to the Heather Ridge and Park Forest Apartments. They were found in Vickie Hogg's luggage and were offered to prove that Vickie Hogg was connected with the apartments. The court limited the testimony to an affirmation that the police officer found a money order receipt for Heather Ridge Apartments among Vickie Hogg's possessions.

Exhibit 25 was the American Express receipt found in Vickie Hogg's car which showed that a

card belonging to Jay Chatman was used to purchase clothing at a Kid's Footlocker store in Culver City, California. The receipt was offered to prove the association of Vickie Hogg and Jay Chatman. The court allowed the receipt to be admitted into evidence concluding that it was not being offered for the truth of the matter asserted.

Exhibit 23 was a receipt for a rental car signed by Pamela Chatman that was found in Vickie Hogg's car. It was offered to prove that Vickie Hogg was associated with Pamela Chatman, that she was connected with the address found on the receipt, and ultimately that she was the business manager and paid the bills associated with the drug conspiracy. The court limited use of the document to testimony that the officer found a rent-a-car receipt, signed by Pamela Chatman, giving an address in Los Angeles, in Vickie Hogg's car.

**20.** The Cellular One documents were raised at trial on two separate occasions. First, Officer Williams testified that he found a Cellular One document in Vickie Hogg's name in her car. McIntyre's attorney did not object at the time that this testimony was introduced. Second, the documents were admitted into evidence through a representative of Cellular One. McIntyre's attorney objected only to the application portion of the document on the grounds that it was not prepared by an employee of Cellular One but by the customer. The application was a form provided by Cellular One to independent contractors who would in turn solicit potential customers. The form required potential customers to fill in certain information and provide a signature as a prerequisite to obtaining cellular phone service.

establish that Vickie Hogg had a cellular phone and that she used that phone to contact her co-conspirators in California, and to show that she travelled to, and used her cellular phone in, California.[21] As such they were offered for the truth of the matter asserted and were hearsay. *See United States v. Jefferson*, 925 F.2d 1242, 1252 (10th Cir.1991) ("a receipt introduced as evidence of payment for a good or service constitutes hearsay"); *see also FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1110 (1st Cir.1986) (money order receipts inadmissible hearsay to prove payments had been made); *United States v. Watkins*, 519 F.2d 294, 296–97 (D.C.Cir.1975) (receipts for rent offered to prove defendant lived at address and therefore offered for truth of matter asserted).

▮ The district court admitted the application on the grounds that it was an admission.[22] However, this basis for introduction of the documents was error. Because the government never verified the signatures on the application, the document was improperly admitted as the admission of a party opponent. *See United States v. Markopoulos*, 848 F.2d 1036, 1039 (10th Cir.1988).[23]

▮ Similarly, although the District Client Service Supervisor for Cellular One testified that the documents were kept in the regular course of business, there was no evidence that there was a policy requiring customers to show identification when signing up for the service. In fact, the Cellular One employee admitted that anyone could have opened this account under the name Vickie Hogg. Furthermore, the application was not taken by a Cellular One employee, but rather by an independent contractor. Accordingly, we find that it was error to admit the document as a business record under Fed.R.Evid. 803(6). *See United States v. Patrick*, 959 F.2d 991, 1000–02 (D.C.Cir. 1992); *United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir.1980); *cf. United States v. Bland*, 961 F.2d 123, 126–27 (9th Cir.1992); *United States v. Zapata*, 871 F.2d 616, 625 (7th Cir.1989).

▮ This does not end our analysis, however, because we must determine whether this error was harmless. In determining whether a particular error is harmless, there are two standards of review: the nonconstitutional harmless error standard of review pursuant to Fed.R.Crim.P. 52(a), or the constitutional standard established in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The record does not indicate that the defendants made constitutional objections to the admission of the document at trial. Rather, they made only general hearsay objections under the Federal Rules of Evidence. *See United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir.1993) (en banc). Although defendants make broad assertions of constitutional violations in their briefs, as this court noted in *Jefferson*, "[a] violation of the hearsay rule does not automatically equate to a violation of the Sixth Amendment."[24] 925 F.2d at 1254. Accord-

Because of McIntyre's failure to object to the record of calls and our belief that the admission of that portion of the document did not amount to plain error, we conclude that the admission of that evidence did not amount to reversible error. Fed.R.Evid. 103(a)(1), (d).

21. The prosecution attempted to allege at trial that they were not offering the document to show that the defendant Vickie Hogg had and used a cellular phone. Rather they asserted that they were only offering the document to show that someone named Vickie Hogg had, and used, a cellular phone from which the jury could infer it was the defendant. R. Vol. IX at 137. We find this to be a distinction without legal significance. *See supra* note 9 and accompanying text.

22. The court noted:
I don't see any reason why it's not admissible as an admission. It is on the basis of someone named Vickie Hogg that filled this out. I think it is circumstantial evidence that she did.

There may be another Vickie Hogg. And that's perfectly good argument. But here's a signature of Vickie Hogg.
R. Vol. IX at 137.

23. Through an adoption of arguments made by one of the attorneys representing a co-defendant, McIntyre's counsel did object to the authenticity of the signature.
In closing arguments, the government invited the jury to compare the signature on the cellular phone receipt and the signature on Exhibit 9, a rental receipt with the signature found on the registration log of the Villa Viejo Motel. However, no evidence was offered at trial attributing any of these signatures to Vickie Hogg.

24. The defendant does argue on appeal that we should review the alleged constitutional violations for plain error, under a more lenient standard as set forth in *Jefferson*, 925 F.2d at 1254. For the reasons outlined in the text, we do not believe that the admission of the document was a

ingly, we apply the nonconstitutional standard of harmless error in this case.

■ The document in question related only to collateral matters, and the prosecution offered it only as circumstantial proof of association among the defendants and to link the defendants with places that drugs were distributed. Furthermore, in light of the direct testimony identifying McIntyre as the leader of the drug operation, we find the Cellular One documents to be cumulative. In fact, the Cellular One application does not directly implicate McIntyre at all.[25] Given the strength of the other evidence and the nature of the documents in question, we find that the admission of the cellular phone application did not affect the outcome of the trial and therefore consider it to be harmless error.

## IV. The Admission of Evidence of Other Acts Outside the Conspiracy

■ The defendant further objects that the district court erred when it allowed Talisha Woods to testify, over the objection of defense counsel, that she and D. Hogg had obtained cocaine from the defendant in October of 1989.[26] The indictment charges that the conspiracy originated "on or about March 1990, the exact date being unknown to the Grand Jury." Before trial, the defendant filed a brief and Request for Notice of Intention to Introduce Similar Acts Under Fed. R.Evid. 404(b), which was denied on July 15, 1991. At trial, the defendant objected to the introduction of the evidence as outside the period of the conspiracy. The district court declined to grant a mistrial and instructed the jury that the evidence might be relevant for purposes of the witnesses' knowledge of the defendants and the way the business may have worked, but that the event fell outside the time period of the indictment so it could

not be considered for purposes of guilt or innocence.

■ We review the admission of prior acts evidence under an abuse of discretion standard. *United States v. Jefferson*, 925 F.2d 1242, 1257 (10th Cir.1991). Federal Rule of Evidence 404(B) states that

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

In *Jefferson* we held that where testimony meets the following four requirements we will presume that there is no undue prejudice:

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Jefferson*, 925 F.2d at 1258.

Our review of the record in this case reveals no error. The testimony was both proper and relevant to the government's case. We agree with the district court's finding that it established the basis of the witness' knowledge and her relationship with the defendant as well as the existence of the conspiracy itself. We cannot say, in light of the abundance of testimony that had been introduced about similar drug transactions, that the district court abused its discretion

---

sufficiently obvious violation of the defendant's constitutional rights to constitute plain error.

**25.** The information on the Cellular One application form was also contained in the phone bill that was admitted, without objection, as part of the same exhibit.

**26.** The following testimony was elicited from Talisha Woods at trial:

Q. Were you ever with Darren (Hogg) when he picked up cocaine from Charles McIntyre?

A. Yes.

Q. Were you ever in Los Angeles when this occurred?

A. Yes.

Q. Approximately how many times?

A. Maybe twice.

Q. Do you recall when the first time was?

A. About the first part of October.

Q. Of what year?

A. '89.

R. Vol. VII at 9–10.

when it found that the testimony was not prejudicial to the defendant. Finally, the district court gave an appropriate limiting instruction. Accordingly, we find that the admission of the prior acts evidence in the instant case does not amount to an abuse of discretion on the part of the trial court.

### V. Comments by the Prosecutor on the Defendant's Failure to Testify

■ The defendant alleges that his Fifth Amendment rights were violated when the prosecutor commented on his refusal to testify. See *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Because we find that the prosecutor did not comment on the defendant's choice not to testify, we find that there was no violation of the defendant's constitutional rights.

In closing arguments the defense counsel argued:

Let's talk about the Comfort Inn where Mr. McIntyre was arrested with this in his shorts.

Who was the person—and let me say this first. Sometimes in a case like this or in any case, the most important witness there can ever be is the one that doesn't testify. That's the witness that can scream from the top of the Courthouse what the truth is and the Government didn't choose to call Redonna Hill as a witness.

And the reason that they didn't is Officer Eastridge told you what she told him after she was arrested. She said the drugs under the mattress is mine.

First, I think she said she didn't know whose they were. But then she said they are my drugs. I got them over at this chicken restaurant from some guy and I was going to sell them for him.

There's no reason to call her. It is obvious why the Government didn't. Why repeat something that's damaging to your case.

Why would the defendant call them as a witness? We don't need to. She's already said they were her drugs.

R. Vol. X at 124. The prosecution then responded in rebuttal:

If defense counsel wished to have a witness stand and scream at the top of the Courthouse, the truth, they are certainly capable. And we would more than welcome such an individual.

But that wasn't done.

The truth is what you heard from the witnesses that have testified.

R. Vol. X at 155–56. Defense counsel objected to these comments, claiming that would be construed as a comment on the defendant's failure to testify. Defense counsel requested either an admonition that the jury disregard the prosecutor's remarks or a mistrial. The court disagreed with defense counsel's characterization of the remark. Nevertheless, he explained "I do and will instruct that the Defendants [sic] silence is not to be considered against the Defendants." [27] R. Vol. X at 169.

■■ In *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955) this court established that a statement is improper if "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." The prosecutor's comments were not a commentary on the defendant's refusal to testify. Rather they were an answer to the defense counsel's inference that the prosecution failed to call Redonna Hill because she would have told the truth about the drugs found in the defendant's possession.[28]

### VI. Sufficiency of the Evidence

■ The defendant next asserts that the evidence brought out at trial was insufficient to support his convictions under each of the five counts. In evaluating the sufficiency of the evidence on appeal we examine the record in the light most favorable to the government to determine if the evidence—both direct and circumstantial, together with all the reasonable inferences to be drawn therefrom—is such that a reasonable jury

27. The jury instructions were not included in the record on appeal.

28. Even if we were to conclude that the prosecutor's comment was a veiled commentary on the defendant's refusal to testify we would not be compelled to overturn the conviction in this case. In the instant case the prosecutor was doing no more than responding to the defense arguments and the record, when viewed as a whole, does not support the conclusion that the defendant's right to a fair trial was denied.

could find guilt beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). We are bound to accept the resolution of conflicting evidence and the assessment of the credibility of witnesses as they are found by the trial judge as the trier of fact. *United States v. Youngpeter,* 986 F.2d 349, 353 (10th Cir. 1993); *United States v. Espinosa,* 771 F.2d 1382, 1391 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). Moreover, "[a] criminal conviction may be sustained on wholly circumstantial evidence." *Hooks,* 780 F.2d at 1529.

Under count one, the defendant argues that the evidence was insufficient to establish conspiracy to distribute cocaine. He assumes incorrectly as the basis for this argument however that the evidence challenged in Sections I, III, and IV, *supra,* would be found to have been admitted in error. Furthermore, he would have us reassess and reweigh the testimony of Darren Hogg in contravention of this court's rulings in *Youngpeter,* 986 F.2d at 353, and *Espinosa,* 771 F.2d at 1391.

 Under counts two and five, the defendant argues that the evidence offered at trial is insufficient to establish possession with intent to distribute. In considering the sufficiency of the evidence under count two, he would again have us reassess and reweigh the testimony of two of his co-conspirators in contravention of *Youngpeter,* 986 F.2d at 353, and *Espinosa,* 771 F.2d at 1391. Furthermore, the uncorroborated testimony of a co-conspirator, so long as it is not incredible or unsubstantial, is sufficient evidence on which to base a conviction. *United States v. Sigal,* 572 F.2d 1320, 1324 (9th Cir.1978). In considering the evidence under count five, the

defendant argues that his mere presence in room 141 of the Comfort Inn on February 28, 1991, is insufficient to support his conviction for possession of the drugs found under the mattress.[29] However, the fact that the defendant was found in possession of marijuana, with cocaine concealed on his person,[30] and was lying on the bed in which the additional cocaine was found is circumstantial evidence from which a reasonable jury could conclude that he was in actual or constructive possession of all the cocaine found in the room. Furthermore, the large quantity of cocaine found in the motel room is sufficient to support a judgment that the defendant intended to distribute cocaine. *See United States v. Hooks,* 780 F.2d 1526, 1532 (10th Cir.1986) (citing *United States v. Gonzalez,* 700 F.2d 196, 204 (5th Cir.1983)).

In counts three and four, the defendant argues that the evidence is insufficient to establish either that he caused interstate travel to facilitate unlawful activity or that he aided and abetted. Again he erroneously assumes that the evidence objected to in Sections I and III, *supra,* would be excluded.[31] This evidence alone would have been sufficient because as this court has recognized a conviction for aiding and abetting may rest upon circumstantial evidence. *United States v. Maldonado–Campos,* 920 F.2d 714, 716 (10th Cir.1990). Furthermore, even without that physical evidence, direct testimony on the record indicates that McIntyre directed the interstate transportation of drugs.

After a thorough review of the record we conclude that the evidence is sufficient to support the defendant's conviction under counts one through five.

## VII. *Cumulative Error*

Next, the defendant would have us consider the cumulative effect of the errors com-

---

**29.** The defendant brought out at trial that the motel room was rented by Redonna Hill, who was also arrested at the time of the execution of the warrant. Although Ms. Hill at first denied owning the drugs and later recanted her statements, she at some point informed the officer that she owned the cocaine that was found in the bed.

**30.** The defendant admits that the cocaine found on his person is sufficient to support a conviction for possession. Aplt. Opening Br. at 45. How-

ever, he points to evidence in the record that he needed 14 grams of cocaine per day to supply his own habit and would have us infer that the 25.7 grams found in his underwear, because it is consistent with personal use, is insufficient to establish possession with intent to distribute.

**31.** McIntyre claims that without the evidence suppressed at the Will Rogers Airport on August 23, 1990, and the receipts from the Villa Viejo and the Magic Carpet motels, the evidence is insufficient to find that he travelled in interstate commerce.

mitted at trial. As we held in *United States v. Rivera,* 900 F.2d 1462, 1471 (10th Cir. 1990), cumulative-error analysis evaluates only the effect of matters found to be errors, not the cumulative effect of non-errors. Here, aside from some wrongly admitted evidence, the defendant has failed to prove there were errors in his trial. We do not find that the cumulative effect of the wrongly admitted evidence rises to such a level that it had a "substantial influence" on the outcome of the trial, nor does it leave us with "grave doubt" as to whether it had such effect under the nonconstitutional harmless error analysis of *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

### VIII. *Quantity of Cocaine Attributed to McIntyre*

■ The defendant next alleges that the district court erred in determining the quantity of cocaine to be used in setting his base offense level. We review the sentencing court's factual determinations under a clearly erroneous standard. *United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991). The quantum of proof necessary to support a finding of fact under the sentencing guidelines is a preponderance of the evidence. *United States v. Rutter,* 897 F.2d 1558, 1560 (10th Cir.), *cert. denied,* 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). Estimates are an acceptable method of calculating drug quantities so long as the information supporting the estimate has a minimum indicia of reliability. *Easterling,* 921 F.2d at 1077.

**32.** However, even if we were to examine Darren Hogg's testimony, we do not feel that the perceived inconsistencies merit reversal. The defendant would have us discredit Darren Hogg's testimony because he asserted on direct examination that McIntyre transported a one and one-half kilos from California on seven occasions between July 1990 and February 1991. Then on cross-examination, Darren Hogg testified that "it was more than seven times.... I didn't say seven. I said several." The defendant would have us calculate, based on eight trips each transporting one and one-half kilos of cocaine, that the evidence only supports a finding that McIntyre can be linked with 11.5 kilos. We disagree. The only direct testimony on the question of quantity is Darren Hogg's testimony that

The defendant first asserts that the trial court improperly relied on Darren Hogg's testimony, which he alleges was untrustworthy because of internal inconsistencies. Again, this court will not reexamine the credibility of a witness' testimony nor will we decide between competing interpretations of testimony. *United States v. Youngpeter,* 986 F.2d 349, 353 (10th Cir.1993); *Espinosa,* 771 F.2d at 1391.[32] Furthermore, the district court only attributed 15 kilos to McIntyre in calculating his base offense level, while both Darren Hogg's testimony and the presentence report suggest that between 20 and 24 kilos were actually attributable to McIntyre.

■ Second, the defendant argues that the cocaine found in the bed mattress at the Comfort Inn on February 28, 1990, was wrongly attributed to him. For the reasons that we find the evidence sufficient to support his conviction under Count 5, *supra* Section VI, we find that it was properly included in calculating his base offense level.

### IX. *Classification of the Drugs*

■ The defendant also claims that the district court erred in finding that the substances attributed to McIntyre were cocaine base rather than cocaine hydrochloride $(HCl_2)$.[33] Under the sentencing guidelines, possession and distribution of cocaine base or "crack" is more severely punished, and McIntyre argues that the district court erred in not presuming that all cocaine that was not tested by a chemist was cocaine hydrochloride (powder) for purposes of sentencing. *See* U.S.S.G. § 2D1.1; *see also* 21 U.S.C. § 841(b)(1)(A)(iii). We disagree.

McIntyre transported between 20 and 24 kilos of cocaine over the course of the conspiracy. The underlying basis for this conclusion is supported by the fact that Darren Hogg later testified that the trips commenced in April of 1990 and not July of 1990.

**33.** Cocaine base, or cocaine free base, as used in the federal statute, includes crack. *United States v. LeRoy,* 944 F.2d 787, 790 (10th Cir.1991) (citing *United States v. Pinto,* 905 F.2d 47 (4th Cir. 1990)). The witnesses in the instant case generally distinguished between powder cocaine and rock, or crack, cocaine. The powder was transported from California to Oklahoma where it was mixed with baking soda and water ("cut") and cooked in glass beakers to form crack.

The calculation of quantities of drugs for purposes of sentencing is reviewed for clear error. *United States v. Slater,* 971 F.2d 626, 638 (10th Cir.1992). The record supports the finding that the drugs possessed by McIntyre were in the form of cocaine base. In his testimony, Darren Hogg consistently refers to the substances possessed by McIntyre as crack cocaine. This court has held that mere testimony concerning the substance is sufficient to support a finding that it is crack rather than cocaine hydrochloride. *See, e.g., United States v. LeRoy,* 944 F.2d 787, 790 (10th Cir.1991); *United States v. Anthony,* 944 F.2d 780, 782 (10th Cir.1991). That Darren Hogg also referred to powder cocaine in his testimony does not persuade us otherwise; in those instances, he was referring to McIntyre transporting cocaine powder from California and cooking the powder into crack.[34]

## X. *Void for Vagueness*

The defendant next challenges the application of 21 U.S.C. § 841 and U.S.S.G. § 2D1.1 as void for vagueness. He asserts that the use of the term "cocaine base" is unconstitutionally vague and deprives him of his Fifth Amendment right to due process. This court has squarely addressed the constitutionality of the use of the term "cocaine base" and found it to be sound. *United States v. Turner,* 928 F.2d 956, 959–60 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). The defendant would have us distinguish *Turner* on the ground that in that case the party did not contend that the substance he possessed was inaccurately classified as cocaine base. However, subsequent to our opinion in *Turner,* this court has rejected that distinction and reaffirmed our holding. *See United States v. Slater,* 971 F.2d 626, 638–39 (10th Cir.1992). Accordingly, we reaffirm the holdings of *Turner* and *Slater,* and hold that the use of the term "cocaine base" does not encourage arbitrary and discriminatory enforcement, and was not vague as applied to the defendant's conviction and sentence in this case.

## XI. *Sentencing Enhancement*

The defendant finally contends that the district court erred when it enhanced the defendant's sentence for serving as an organizer or leader under U.S.S.G. § 3B1.1(c). We review the district court's factual findings regarding the role of the defendant under a clearly erroneous standard. *United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Having reviewed the record, we cannot conclude that the district court clearly erred in finding that McIntyre was a leader and organizer under U.S.S.G § 3B1.1. McIntyre was clearly the key figure in the transportation of cocaine from California to Oklahoma; he solicited and directed the involvement of the participants in the conspiracy; and he accepted the proceeds of sales through middlemen and was involved with partnerships with other drug dealers.

## CONCLUSION

For the forgoing reasons, the defendant's conviction and sentence are AFFIRMED.

## SUPPLEMENTAL ORDER MODIFYING EARLIER OPINION AND DENYING PETITIONS FOR REHEARING

Aug. 18, 1993.

EBEL, Circuit Judge.

We have before us a Petition for Rehearing and a Suggestion for Rehearing En Banc filed by counsel for the defendant. In addition, we have allowed the defendant to file a pro se Petition for Rehearing and a Suggestion for Rehearing En Banc.[1]

---

**34.** In addition, Darren Hogg testified that cooking powder cocaine produces over 50% more crack cocaine in terms of weight; accordingly, even if we accepted McIntyre's argument that the imported substance was powder cocaine, the testimony concerning cooking would support a finding that McIntyre possessed even more base or crack cocaine.

**1.** In accordance with Rule 35(b), Federal Rules of Civil Appellate Procedure, the suggestions for rehearing en banc were transmitted to all of the judges of the court who are in regular active service. No member of the panel and no judge in regular active service on the court having requested that the court be polled on rehearing en banc, the suggestions for en banc review are denied.

In his pro se petition for rehearing, the defendant argues more forcefully than he did in his Pro Se Supplemental Reply Brief on direct appeal that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment. In particular the defendant claims that, in the course of closing arguments, his trial counsel conceded that the defendant was guilty of certain crimes charged in the indictment to which he had plead not guilty.

The Tenth Circuit has adopted a general policy that claims of ineffective assistance of counsel are best addressed on collateral attack where a complete evidentiary record can be established. *See Beaulieu v. United States,* 930 F.2d 805, 806–07 (10th Cir.1991); *Osborn v. Shillinger,* 861 F.2d 612, 622–23 (10th Cir.1988). The defendant's pro se petition for rehearing convinces us that the issues he raises concerning defense counsel's improper closing remarks before the jury and any other claims of ineffective trial counsel are best addressed in collateral proceedings. *See Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) ("an inquiry into counsel's conversations with the defendant might be critical"). Accordingly, we AMEND our prior opinion to dismiss the defendant's ineffectiveness of counsel claim without prejudice to his ability to raise that issue in a collateral attack.

In all other respects the Petitions for Rehearing and Suggestions for Rehearing En Banc are DENIED.